**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| VI-JON, LLC,[1] | Case No. 26-11216 ([●]) |
| Debtor. | |

**DEBTOR'S MOTION**
**FOR ENTRY OF INTERIM AND FINAL ORDERS**
**(I) AUTHORIZING, BUT NOT DIRECTING, THE DEBTOR TO**
**(A) PAY PREPETITION EMPLOYEE WAGES, SALARIES, OTHER**
**COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE**
**EMPLOYEE BENEFIT PROGRAMS AND (II) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor in possession (the "Debtor") respectfully states the following in support of this motion (the "Motion"):[2]

**RELIEF REQUESTED**

1.      The Debtor seeks entry of an interim order and a final order (respectively, the "Interim Order" and "Final Order"), substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting, among other things, the following relief:

> a.  authorizing, but not directing, the Debtor to pay prepetition wages, salaries, other compensation, independent contractor obligations, and reimbursable expenses, and continue employee benefits programs in the ordinary course of business, including payment of certain prepetition obligations related thereto, each as set forth herein,

---

[1] The Debtor in this chapter 11 case is Vi-Jon, LLC.  The last four digits of the Debtor's federal tax identification number are 8002.  The Debtor's service address is 8800 Page Ave., St. Louis, MO 63114.

[2] A detailed description of the Debtor, its business and the facts and circumstances supporting this Motion and the Debtor's chapter 11 case are set forth in greater detail in the *Declaration of Mackenzie Shea in Support of the Debtor's Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration"), filed contemporaneously herewith. Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the First Day Declaration.

including, where applicable, by remitting or reimbursing amounts to Vivos or Emprise pursuant to the Administrative Services Agreements (each as defined below) and the postpetition intercompany reconciliation and cash-remittance process described herein; and

b.  granting related relief, including scheduling a final hearing to consider approval of the Motion on a final basis.

## JURISDICTION AND VENUE

2.  The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  The Debtor confirms its consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.  The statutory and legal bases for the relief requested in this Motion are sections 105(a), 363(b), 507(a), and 541(b)(1) of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9013-1(m).

## BACKGROUND

5.  The Debtor is a provider of private-label dry bath products consisting of Epsom salts and body powders.  The Debtor's products are sold across retail and e-commerce channels in

the United States to major retailers such as Amazon, Dollar General, Kroger, TopCo, and Walgreens. The Debtor leverages shared-services and co-manufacturing agreements with its affiliates for sourcing, manufacturing, packaging, testing, quality control, and distribution of its products.

6. On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Court. The Debtor continues to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in this case, and no statutory committee has been appointed.

7. Additional information regarding the Debtor's business, capital structure, and circumstances preceding the Petition Date may be found in the First Day Declaration.

**THE DEBTOR'S WORKFORCE**

8. As of the Petition Date, the Debtor employs one full-time salaried employee (the "Employee") and one independent contractor (the "Independent Contractor"). The Employee performs a variety of functions critical to the preservation of value and the administration of the Debtor's estate. Specifically, the Employee is the Vice President and General Manager of the Debtor. The Employee is responsible for overseeing the Debtor's profit-and-loss performance, developing strategies to drive growth and identify market opportunities, coordinating manufacturing optimization between the Debtor and its Non-Debtor Affiliates, supporting sales and digital marketing initiatives, advancing brand development, managing projects, analyzing business data, and conducting market research.

9. The Independent Contractor's role is limited and specifically tailored to support the Debtor's defense and administration of talc-related claims and litigation. The Independent Contractor assists the Debtor and its counsel with matters requiring institutional knowledge of the

Debtor's historical products, operations, and records, including responding to discovery, preparing for and assisting with depositions, coordinating factual information needed for witness testimony, reviewing case-related materials, and otherwise supporting the Debtor's counsel.  The Independent Contractor's services are necessary during this chapter 11 case because the Independent Contractor's institutional knowledge is critical to helping the Debtor manage the talc-related claims, preserve estate resources, and evaluate potential settlements of such claims.

10.     In short, continued employment and satisfaction of obligations owed to both the Employee and Independent Contractor are critical for the Debtor.  Without the continued, uninterrupted services of the Employee and Independent Contractor, the Debtor simply could not operate its business or preserve value for the benefit of the stakeholders.

**THE ADMINISTRATIVE SERVICES AGREEMENTS**

11.     As discussed more fully in the *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Continue Operating Under the Shared Services Agreements and (II) Granting Related Relief*, filed contemporaneously herewith, the Debtor and certain of its Non-Debtor Affiliates are parties to various Shared Services Agreements (as defined therein). Critically, Vivos and Emprise provide certain employee benefits to the Employee pursuant to (i) that certain Administrative Services Agreement, dated December 3, 2023, by and among Vivos Holdings, LLC ("Vivos") and the Debtor (the "Vivos Administrative Services Agreement"), and (ii) that certain Administrative Services Agreement, dated December 3, 2023, by and among Emprise and the Debtor (the "Emprise Administrative Services Agreement" and, together with the Vivos Administrative Services Agreement, the "Administrative Services Agreements").  The Debtor pays Vivos an annual fee (the "Vivos Administrative Fee") for certain services provided under the Vivos Administrative Services Agreement and also pays Vivos for certain direct costs

incurred by Vivos on the Debtor's behalf, including payments due to the Benefit Providers (as defined below).  The Debtor does not pay an annual fee to Emprise on behalf of these services as all payments on account of the Employee Benefits (as defined below) are made by Vivos.

12.    Specifically, under the Administrative Services Agreements, Emprise provides or administers health benefits, ESOP-related benefits, and other employee-related benefit programs for the Employee (collectively, the "Employee Benefits"), while Vivos pays the applicable third-party benefit providers and plan administrators (collectively, the "Benefit Providers") on the Debtor's behalf.  Vivos charges the Debtor a fee equal to 21% of the Employee's gross payroll for Employee Benefits and related administrative costs (the "Gross Payroll Fee").  The Gross Payroll Fee constitutes a direct cost under the Vivos Administrative Services Agreement and is not included in, or covered by, the fixed annual fee charged to the Debtor thereunder.

13.    Historically, amounts owed among the Debtor and Vivos on account of Employee Benefits, including the Gross Payroll Fee, were reconciled monthly for accounting purposes, and cash settlement generally occurred from time to time pursuant to a true-up.  Going forward, postpetition activity between the Debtor, Vivos, Emprise, and any other Non-Debtor Affiliates will be settled through weekly cash remittances rather than carried as a continuing intercompany balance.  At the close of each week, the Debtor and its Non-Debtor Affiliates, as applicable, will reconcile all intercompany activity, including shared-services charges, affiliate-paid costs,

reimbursements, allocations, and other amounts payable to or receivable by the Debtor. That reconciliation will include the Gross Payroll Fee.[3]

**EMPLOYEE COMPENSATION AND BENEFITS**

14. The Debtor pays the Employee directly every two weeks and pays the Independent Contractor directly every month (the "Key Personnel Compensation" and, together with the Employee Benefits, the "Employee Obligations").[4] The Debtor estimates that, as of the Petition Date, it owes certain outstanding amounts in connection with the Key Personnel Compensation and Employee Benefits programs (the "Prepetition Employee Obligations"). The Employee Obligations (including Prepetition Employee Obligations) include, as applicable, amounts required to be remitted to taxing authorities or other third-party payees and amounts owed to Vivos or Emprise on account of Employee Benefits, the Gross Payroll Fee, payroll processing, or other employee-related services administered under the Shared Services Agreements, but not including fees for certain human-resources and accounting services provided by Vivos in relation to administering the payroll process. The Debtor also seeks authority to continue to pay or honor the Employee Obligations, together with the Withholding Obligations, Payroll Processing Fees, and Reimbursable Expenses (each as defined below), that will come due and owing during the pendency of this chapter 11 case in the ordinary course of business on a postpetition basis and consistent with past practices. The Debtor estimates that, in the aggregate across all of the

---

[3] For further information on the reconciliation and cash-remittance process, please refer to the *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Continue Use of Its Existing Cash Management System, Bank Accounts, and Business Forms and (B) Pay Certain Obligations Related Thereto, (II) Authorizing Postpetition Intercompany Transactions, (III) Approving the Amended Keepwell Agreement, (IV) Waiving Requirements of Section 345(b) of the Bankruptcy Code, and (V) Granting Related Relief* and the *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Continue Operating Under the Shared Services Agreements and (II) Granting Related Relief*, filed contemporaneously herewith.

[4] Given the Debtor's limited workforce, the Debtor has stated these obligations on an aggregate basis and has provided a categorized breakdown to the Office of the United States Trustee and will provide the same to any statutory committee appointed in this chapter 11 case upon request.

foregoing categories, the obligations that may come due within approximately the first thirty (30) days following the Petition Date will not exceed $40,000 (the "Interim Amount"), and that the total obligations that may come due during the pendency of this chapter 11 case will not exceed $150,000 (the "Total Amount").  The Employee Obligations are described in further detail below and, in the case of Prepetition Employee Obligations, the relief sought in the Interim Order and Final Order reflects the priority claim amount cap.[5]

15.     The Debtor estimates that, with respect to the Prepetition Employee Obligations, no Key Personnel Compensation and Employee Benefit Obligations accrued prepetition.  Further, no Withholding Obligations and Payroll Processing Fees accrued prepetition, and $2,000 in Reimbursable Expenses accrued prepetition.

16.     The Employee and Independent Contractor rely on Key Personnel Compensation, and the Employee relies on the Employee Benefits, to pay daily living expenses and maintain ordinary course benefits.  Thus, these individuals will experience significant financial hardship if the Court does not permit the Debtor to continue providing Key Personnel Compensation and Employee Benefits, as applicable, including the payment of any Prepetition Employee Obligations. Further, the Debtor's failure to honor its prepetition and postpetition obligations in connection with Key Personnel Compensation and Employee Benefits could cause the Employee to leave or the Independent Contractor to cease providing services, which would be detrimental to the administration of this chapter 11 case.

17.     The Debtor seeks to minimize the personal hardship that the Employee and Independent Contractor will suffer if Key Personnel Compensation and Employee Benefit

---

[5] The Debtor's Prepetition Employee Obligations do not exceed the $17,150 priority claim cap set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code (the "Priority Cap").

Obligations, as applicable, including the Prepetition Employee Obligations, are not timely paid, remitted, or reconciled, including through the Non-Debtor Affiliates, during this chapter 11 case. The Debtor, therefore, seeks authorization to continue administering its Key Personnel Compensation and Employee Benefits in the ordinary course of business, in a manner consistent with its prepetition practices, on a postpetition basis, as applicable, consistent with the manner described in more detail below, including by paying the Employee and Independent Contractor in the ordinary course through Paycom (as defined below), continuing to remit or reimburse amounts payable to Vivos or Emprise in connection with the Employee Benefits and related administrative services, and reconciling such amounts through the intercompany reconciliation process. Out of an abundance of caution, the Debtor further requests confirmation of its right to modify, change, and/or discontinue or implement new Key Personnel Compensation and Employee Benefits programs, policies, and benefits in the Debtor's discretion in the ordinary course during this chapter 11 case, including any related payment, reimbursement, or reconciliation procedures with Vivos or Emprise (subject in all respects to the terms of the Interim and Final Order and any financing order, including any budget) without the need for further Court approval, subject to applicable law.

I.     **Compensation, Withholding Obligations, Payroll Processing, and Reimbursable Expenses.**

     A.     **Key Personnel Compensation.**

18.     In the ordinary course of business, the Debtor incurs obligations to its Employee for wages and similar obligations. The Debtor pays the Employee every two weeks by direct deposit through electronic transfer of funds to the Employee's bank account. Payroll is processed using Paycom Software, Inc. ("Paycom") payroll management software, with payroll

administration support provided under the Administrative Services Agreements as part of the fixed annual fee.

19. Separately, the Independent Contractor is engaged by the Debtor to perform litigation-related services. The Independent Contractor submits monthly invoices summarizing the services performed, hours worked, and any reimbursable expenses, and the Debtor pays undisputed invoiced amounts within sixty (60) days following such invoice. The Independent Contractor does not receive any Employee Benefits.

20. As of the Petition Date, the Debtor estimates that it owes no amounts on account of prepetition Key Personnel Compensation. The Debtor anticipates that, as of the Petition Date, certain Key Personnel Compensation owed to its Employee and Independent Contractor will become due and owing within the first thirty (30) days after the Petition Date (the "Interim Period") and thereafter during the pendency of this chapter 11 case. Out of an abundance of caution, the Debtor seeks authority to pay any accrued but unpaid Key Personnel Compensation and to continue paying the Key Personnel Compensation on a postpetition basis in the ordinary course of business and consistent with past practices. Accordingly, the authority to continue paying its Employee and Independent Contractor is critical to helping the Debtor manage the talc-related claims, preserve estate resources, and evaluate potential settlements of such claims.

**B.    Additional Compensation Obligations.**

21. The Debtor provides various forms of additional compensation (collectively, the "Additional Compensation Obligations") to the Employee, as described below.

22. Emprise maintains an Employee Stock Ownership Plan (the "ESOP"), a tax-qualified employee stock ownership plan established for the benefit of eligible employees and their beneficiaries. The ESOP is available to eligible employees of Emprise and its subsidiaries, including the Debtor. The Employee is eligible to participate in the ESOP. The ESOP is intended

9

to assist eligible employees with saving for retirement and to more closely align their financial interests with the success of Emprise and its affiliates, including the Debtor. The assets of the ESOP are held in the Emprise Employee Stock Ownership Trust (the "ESOP Trust"), which holds stock and other assets for the exclusive benefit of ESOP participants and their beneficiaries. To the extent applicable to the Employee, the Debtor may be required to reimburse or otherwise satisfy Debtor-attributable obligations arising from the Employee's participation in the ESOP and ESOP Trust, including contributions, administrative expenses, trust expenses, and any payments or distributions to or for the benefit of ESOP participants and beneficiaries, in each case in accordance with the ESOP, the ESOP Trust, and applicable law (collectively, the "ESOP Obligations"). Any ESOP Obligations owed by the Debtor will be administered as part of the Employee Benefits and reconciled with Vivos or Emprise, as applicable, through the intercompany reconciliation process described herein. The Debtor does not expect to incur any ESOP Obligations on account of the Employee during the pendency of this chapter 11 case, and no such amounts are earned and unpaid as of the Petition Date.

C.     **Withholding Obligations.**

23.     In the ordinary course of business, the Debtor incurs obligations on account of Payroll Deductions and Payroll Taxes (each as defined below and collectively, the "Withholding Obligations"). The Withholding Obligations are administered on the Debtor's behalf by Vivos pursuant to the Administrative Services Agreements, including the processing, withholding, and reconciliation of such amounts. Remittances of such amounts are administered through Paycom. As of the Petition Date, the Debtor estimates that it owes no amounts on account of prepetition Withholding Obligations but that certain Withholding Obligations will continue to come due and must be remitted during the Interim Period and thereafter during the pendency of this chapter 11 case. The Debtor submits that, with the exception of the Employer Payroll Taxes

10

(as defined below), the Withholding Obligations generally are not property of the estate and are held in trust until deposited with the various applicable third-party recipients.  Out of an abundance of caution, the Debtor respectfully requests that the Court authorize the Debtor to continue to honor its Withholding Obligations and to pay any prepetition amounts owed with respect thereto in the ordinary course of business.

### 1.   *Payroll Deductions*

24.    During each payroll period, Vivos, on behalf of the Debtor, administers the processing of certain amounts from the Employee's paycheck, including pre-tax and after-tax deductions payable pursuant to certain employee benefit plans discussed herein, such as the Employee's share of medical, dental and vision benefits, insurance premiums, disability benefits, health savings account ("HSA") contributions, and 401(k) contributions (collectively, the "Payroll Deductions"), and the Debtor forwards the Payroll Deductions to various third-party recipients through Paycom.  Vivos manages the Payroll Deductions for the Debtor pursuant to the Administrative Services Agreements, including Payroll Deductions related to Employee Benefits. To the extent Payroll Deductions relate to benefit programs maintained or administered by Emprise, Vivos coordinates with Emprise or the applicable benefit plan administrators so that such amounts are remitted to the appropriate third-party recipients when due.  Amounts paid, remitted, or otherwise administered by Vivos on the Debtor's behalf on account of the Employee Benefit Obligations (as defined below) are captured through the intercompany reconciliation process described above.

### 2.   *Payroll Taxes*

25.    In addition to the Payroll Deductions, certain federal and state laws require that the Debtor withhold amounts from the Employee's gross pay related to federal, state, and local income taxes, as well as Social Security and Medicare taxes for remittance to the appropriate federal, state,

11

or local taxing authorities (collectively, the "Employee Payroll Taxes"). The Debtor must then match the Employee Payroll Taxes from its own funds and pay, based on a percentage of gross payroll, additional amounts for federal and state unemployment insurance and Social Security and Medicare taxes (collectively, the "Employer Payroll Taxes," and together with the Employee Payroll Taxes, the "Payroll Taxes"). The Payroll Taxes are generally processed and forwarded to the appropriate federal, state, and local taxing authorities in accordance with remittance intervals and deadlines established by those taxing authorities. Vivos handles the processing of Payroll Taxes on the Debtor's behalf pursuant to the Administrative Services Agreements, and the Debtor-attributable amounts are captured through the intercompany reconciliation process described above. Remittances of Payroll Taxes are administered through Paycom. The Debtor believes that any amounts held by the Debtor on account of the Withholding Obligations generally are held in trust pursuant to federal and state law and therefore are not property of its estate.

26.     As of the Petition Date, the Debtor believes it does not owe any amounts on account of prepetition Payroll Taxes. However, obligations related to Payroll Taxes will continue to come due and must be remitted during the Interim Period and thereafter during the pendency of this chapter 11 case. The Debtor seeks authority to continue remitting the Payroll Taxes in the ordinary course of business and consistent with past practices.

**D.      Payroll Processing Fees.**

27.     Vivos manages the Debtor's payroll-processing function, including coordination with Paycom, as part of the administrative services provided under the Administrative Services Agreements. Debtor-attributable amounts related to payroll processing on account of administering benefits and performing accounting-related services are captured in the Administrative Fees under the Administrative Services Agreements and are not separately billed

12

to the Debtor as standalone payroll-processing fees.  The Debtor separately pays the Payroll Processing Fees to Paycom.

28.     As of the Petition Date, the Debtor believes it does not owe any amounts on account of prepetition payroll processing fees relating to services performed by Paycom, and does not believe it owes any separate prepetition payroll processing fees on account of Vivos-provided services other than amounts, if any, already captured in the yearly fixed fee under the Administrative Services Agreements.  Nevertheless, to the extent any such prepetition payroll processing fees or related amounts are owed on account of Vivos-provided services, the Debtor seeks authority, but not direction, to pay such amounts in the ordinary course of business.  The Debtor further seeks authority, but not direction, to pay the Payroll Processing Fees on a postpetition basis in the ordinary course of business and consistent with past practices.

### E.     Reimbursable Expenses.

29.     In the ordinary course of business, the Debtor reimburses the Employee and, to the extent applicable, the Independent Contractor for certain pre-approved expenses incurred on behalf of the Debtor within the scope of their employment and engagement (the "Reimbursable Expenses").  Reimbursable Expenses include, among other expenses, business travel-related expenses such as air travel, lodging, car rental, and meal allowances, and reasonable business-related expenses.  The Employee and Independent Contractor generally pay for their own Reimbursable Expenses up front (*i.e.*, not via a company credit card) and then apply for reimbursement of such expenses by submitting an expense report for review.  Vivos reviews the expense reports and approves charges that constitute allowable Reimbursable Expenses incurred on behalf of the Debtor.  Following Vivos's review and approval, the Debtor remits payment to the Employee through Paycom or, to the extent applicable, directly to the Independent Contractor.

30.    The inability of the Debtor to reimburse the Reimbursable Expenses could impose a hardship on the Employee or Independent Contractor where they incurred obligations for the Debtor's benefit.  Such amounts are incurred as business expenses on the Debtor's behalf and with the understanding that such expenses would be reimbursed.

31.    During the three-month period before the Petition Date, the Debtor incurred a monthly average of approximately $2,000 on account of Reimbursable Expenses.  Due to the timing of when Reimbursable Expenses are submitted, it is difficult for the Debtor to precisely estimate the amount of prepetition Reimbursable Expenses outstanding as of the Petition Date.  Based on historical practice, however, the Debtor estimates that as of the Petition Date, it owes approximately $2,000 on account of Reimbursable Expenses.

32.    Accordingly, the Debtor respectfully requests that the Court authorize the Debtor to continue to honor its obligation to reimburse the Reimbursable Expenses and to pay any prepetition claims with respect thereto in the ordinary course of business and consistent with historical practices.

## II.    Employee Benefit Obligations.

33.    In the ordinary course of business, the Employee is eligible to participate in various employee benefit plans and programs sponsored, provided, or administered by Emprise and made available to the Employee pursuant to the Administrative Services Agreements (collectively, the "Employee Benefit Obligations").  As discussed above, the Employee Benefits are provided or administered under the Administrative Services Agreements.  Emprise provides or administers the relevant programs, and Vivos pays the applicable Benefit Providers on the Debtor's behalf and charges the Debtor the Gross Payroll Fee.  The Employee Benefit Obligations include, among other things, medical and prescription drug coverage, dental coverage, vision coverage, HSA and flexible spending account options, life and accidental death and dismemberment insurance, short-

14

term and long-term disability coverage, voluntary critical illness and accident coverage, a 401(k) plan, ESOP participation, paid leave, telemedicine and virtual counseling, employee assistance programs, travel assistance, and other wellness and ancillary benefit programs.

34.     The Debtor seeks authority, in its discretion, to pay prepetition claims (if applicable) to honor obligations, and to continue programs in the ordinary course of business and consistent with prior practice relating to the Employee Benefit Obligations, including by reimbursing or remitting amounts to Vivos under the Administrative Services Agreements and the intercompany reconciliation process described herein.  The Debtor reserves the right to modify or discontinue any of the Employee Benefit Obligations in its discretion or to adjust applicable costs, the scope of benefits provided, or reporting periods permitted thereunder.

35.     Failure to continue the Employee Benefit Obligations could cause the Employee to experience severe hardship or leave the Debtor's workforce.  Accordingly, the Debtor respectfully requests that the Court authorize, but not direct, the Debtor to continue to honor its Employee Benefit Obligations, to pay any prepetition claims with respect thereto in the ordinary course of business, and reimburse or remit to Vivos amounts paid or administered on the Debtor's behalf under the Administrative Services Agreements.  The Employee Benefit Obligations include the following.

### A.     Medical and Prescription Drug Coverage.

36.     Under the Employee Benefits provided or administered pursuant to the Administrative Services Agreements, the Employee is eligible for fully insured medical and prescription drug coverage programs through UnitedHealth Group Inc. ("UnitedHealthcare" or the "Medical Coverage Administrator").  The Emprise benefit program offers two medical plan options: (a) a high deductible health plan (the "HDHP") and (b) a PPO plan (the "PPO Plan," and

together with the HDHP, the "Medical Coverage").  The Employee has the option to waive coverage if he is covered under another insurance plan.

37.     On average, the Debtor, through Emprise, covers approximately 71 percent of the cost of premiums, while the Employee covers the remaining 29 percent.  Legal spouses, domestic partners, and children are eligible dependents that may be covered under the Medical Coverage plans.  The annual cost of the Medical Coverage to the Debtor is approximately $13,700.  As of the Petition Date, the Debtor believes there are no outstanding amounts with respect to the (a) Medical Coverage premiums and (b) medical and pharmacy claims but, out of an abundance of caution, requests authority to continue to honor such programs on a postpetition basis in the ordinary course of business.

**B.     HSA and Flexible Spending Account Programs.**

38.     In addition to offering the Medical Coverage described above, the Employee is eligible to enroll in certain health savings account programs if enrolled in the HDHP (the "HSA Program"), which is administered by Optum Bank, Inc.  The Employee may make pre-tax payroll contributions to the HSA Program up to the maximum amounts permitted by the Internal Revenue Service.  The Debtor also makes employer contributions to the HSA Program, and remits approximately $630 per month on account of the HSA.  The Employee may use the proceeds of the HSA Program to, among other things, cover the cost of eligible health care expenses incurred by the Employee and/or his dependents, depending on the program in which he is enrolled.

39.     The Employee may also elect to participate in flexible spending account programs, including a health care flexible spending account, dependent care flexible spending account, and limited purpose flexible spending account, to the extent eligible and in accordance with plan terms (collectively, the "FSA Programs").

40. As of the Petition Date, the Debtor does not believe that it owes any amounts on account of the HSA Program or FSA Program, but, out of an abundance of caution, requests authority, but not direction, to continue to honor such programs on a postpetition basis in the ordinary course of business.

### C. Life and AD&D Insurance.

41. Through the Employee Benefits provided or administered pursuant to the Administrative Services Agreements, the Employee is offered basic life insurance and accidental death and dismemberment insurance ("AD&D") through Unum Life Insurance Company of America ("Unum"), subject to applicable waiting periods and plan terms (collectively, the "Life and AD&D Benefits"). The Life and AD&D Benefits are fully paid for by the Debtor, and such amounts are encompassed in the Gross Payroll Fee. The Employee may also elect optional employee life and AD&D coverage and, if applicable, dependent life and AD&D coverage, subject to the terms of the applicable plan. As of the Petition Date, the Debtor does not believe that it owes any amounts on account of the Life and AD&D Benefits, but requests authority to continue to honor the Life and AD&D Benefits on a postpetition basis in the ordinary course of business.

### D. Short-Term and Long-Term Disability Coverage.

42. Through the Employee Benefits provided or administered pursuant to the Administrative Services Agreements, the Employee is offered short-term disability coverage and long-term disability coverage through Unum, subject to applicable waiting periods and plan terms (collectively, the "Disability Benefits"). The Disability Benefits are fully paid for by the Debtor, and such amounts are encompassed in the Gross Payroll Fee. The Disability Benefits are intended to provide security if the Employee becomes unable to work due to illness, injury, surgery, childbirth, or another covered disability. As of the Petition Date, the Debtor does not believe that

17

it owes any amounts on account of the Disability Benefits, but requests authority to continue to honor the Disability Benefits on a postpetition basis in the ordinary course of business.

**E.      Supplemental Individual Disability Insurance.**

43.    Through the Employee Benefits provided or administered pursuant to the Administrative Services Agreements, the Employee may elect voluntary critical illness and accident coverage through Chubb Limited and may have access to other supplemental or ancillary programs made available through Emprise's benefit platform (collectively, the "Supplemental Disability Insurance").   These programs are employee-elected and funded through payroll deductions.  As of the Petition Date, the Debtor does not believe that it owes any amounts on account of the Supplemental Disability Insurance, but, out of an abundance of caution, requests authority to continue to honor the Supplemental Disability Insurance on a postpetition basis in the ordinary course of business.

**F.      Dental Insurance Coverage.**

44.    Through the Employee Benefits provided or administered pursuant to the Administrative Services Agreements, the Employee may participate in dental coverage through Delta Dental of Missouri (the "Dental Coverage").  The Dental Coverage includes preventative, basic, major, and orthodontia coverage, subject to the terms, limits, deductibles, and cost-sharing requirements of the applicable plan.  As of the Petition Date, the Debtor does not believe that it owes any amounts on account of Dental Coverage, but requests authority to continue to honor Dental Coverage on a postpetition basis in the ordinary course of business.

**G.      Vision Insurance Coverage.**

45.    Through the Employee Benefits provided or administered pursuant to the Administrative Services Agreements, the Employee, to the extent eligible, may participate in vision coverage administered through UnitedHealthcare (the "Vision Coverage").  The Vision

Coverage includes routine vision exams and frame or contact lens benefits, subject to the terms, limits, and cost-sharing requirements of the applicable plan. As of the Petition Date, the Debtor does not believe that it owes any amounts on account of Vision Coverage, but requests authority to continue to honor Vision Coverage on a postpetition basis in the ordinary course of business.

**H.      401(k) Plan.**

46.     Under the Employee Benefits provided or administered pursuant to the Administrative Services Agreements, the Employee may participate in the Emprise 401(k) administered through Fidelity, Inc. (the "401(k) Plan"). The 401(k) Plan permits the Employee to defer a portion of his wages into the 401(k) Plan, which amounts are deducted from the Employee's paycheck. The Debtor matches 100% of the first 3% of the Employee's contribution and 50% of the next 2% of the Employee's contribution.

47.     On behalf of the Employee, Vivos and Emprise coordinate the remittance of Employee deferrals and any employer matching contributions to the 401(k) Plan following each applicable pay period, and Debtor-attributable amounts are captured through the intercompany reconciliation process. The Debtor seeks authority, but not direction, to continue honoring the 401(k) Plan, including any prepetition deferrals, employer matching contributions, administrative expenses, or related amounts, in the ordinary course of business and in accordance with the terms of the 401(k) Plan and applicable law.

48.     As of the Petition Date, the Debtor does not believe that it owes any amounts on account of the 401(k) Plan, but requests authority to continue to honor the 401(k) Plan on a postpetition basis in the ordinary course of business.

**I.      Paid Leave.**

49.     Under the Employee Benefits provided or administered pursuant to the Administrative Services Agreements, the Debtor provides paid time off benefits to the Employee,

to the extent eligible, including vacation days, sick days, and holidays (the "Paid Time Off"). Accrual of Paid Time Off begins on the Employee's first day and is administered in accordance with the applicable policy.

50.     As of the Petition Date, the Debtor does not believe that it owes any amounts on account of Paid Time Off, but, out of an abundance of caution, requests authority to continue to honor Paid Time Off on a postpetition basis in the ordinary course of business.  The Debtor is not requesting authority to pay amounts relating to Paid Time Off.

### J.      Other Employee Benefit Programs.

51.     In addition to the foregoing, the Employee has access to other benefit practices, programs, and policies provided or administered by the Debtor through reimbursement to the Employee, including a monthly phone allowance, or provided or administered through Emprise's benefit platform and the Administrative Services Agreements, including, but not limited to, telemedicine care, virtual primary care, and virtual counseling, travel assistance, educational assistance, employee discounts, and other wellness, health, or ancillary benefits (collectively, the "Other Employee Benefit Programs").  As of the Petition Date, the Debtor does not believe any amounts are accrued but unpaid on account of the Other Employee Benefit Programs.  The Debtor requests authority, but not direction, to pay any accrued but unpaid obligations related to the Other Employee Benefit Programs, including through the payment and reconciliation framework described herein, and to continue to honor the Other Employee Benefits Programs on a postpetition basis, in the ordinary course of business.

### III.    Severance Obligations.

52.     Pursuant to the Debtor's severance policy, the Debtor may become obligated to make certain severance payments to the Employee upon a qualifying termination of employment, in an amount of up to six months of the Employee's current base salary plus any related benefits

(the "Severance Obligations").  The Employee has a job title and corresponding job grade of Vice President and is not an insider within the meaning of 11 U.S.C. § 101(31) (an "Insider").  As of the Petition Date, the Employee remains employed, and no Severance Obligations are due or outstanding.  By this Motion, the Debtor does not seek authority to pay Severance Obligations if such obligations come due, but reserves the right to pay Severance Obligations if permitted under the Bankruptcy Code or by an order of the Court pursuant to a separate motion.

BASIS FOR RELIEF REQUESTED

I. **Sufficient Cause Exists to Authorize the Debtor to Honor the Key Personnel Compensation and the Employee Benefits.**

    A. **Certain Key Personnel Compensation and Employee Benefits are Entitled to Priority Treatment.**

53.    Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle priority treatment to certain of the Key Personnel Compensation and Employee Benefits owed to the Employee and, to the extent applicable, the Independent Contractor.  The Debtor is required to pay such priority claims in full to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for (a) wages, salaries, or commissions, including sick leave pay earned by an individual and (b) contributions to an employee benefit plan).  To the extent that the Employee receives no more than the statutorily prescribed limit on account of claims entitled to priority, granting the relief sought herein should only affect the timing of certain payments to the Employee and should not negatively affect recoveries for general unsecured creditors.

54.    Payment of the Key Personnel Compensation and Employee Benefit Obligations as set forth in this Motion enhances value for the benefit of all interested parties and reduces the risk that the Employee would leave and the Independent Contractor would cease providing services if payment were to cease.

21

55.     Indeed, the Debtor submits that payment of the Key Personnel Compensation and Employee Benefit Obligations at this time enhances value for the benefit of all interested parties. Finding, recruiting, and training new qualified talent would be extremely difficult and may result in substantially higher costs for the Debtor's estate.

**B.      Payment of Certain Key Personnel Compensation and Employee Benefits Is Required by Law.**

56.     As discussed above, the Debtor seeks authority to pay the Withholding Obligations to the appropriate third-party payees.  These amounts principally represent Employee earnings that governments, the Employee, and judicial authorities have designated for deduction from the Employee's wages.  Certain Withholding Obligations are not property of the Debtor's estate because such amounts were withheld from the Employee's wages on behalf of other parties.  *See* 11 U.S.C. § 541(b)(1), (d).  Federal and state laws require the Debtor to withhold certain tax payments from the Employee's wages and to pay such amounts to the appropriate taxing authority. 26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes).  Because the Withholding Obligations may not be property of the Debtor's estate, the Debtor requests authorization to transmit the Withholding Obligations to the proper parties in the ordinary course of business, including by reimbursing or remitting amounts to Vivos under the Administrative Services Agreements and the intercompany reconciliation process described herein.  *See In re Dameron*, 155 F.3d 718, 721 (4th Cir. 1998).  Indeed, certain Withholding Obligations are not property of the Debtor's estate pursuant to federal and state law, because the Debtor is required to

22

withhold such amounts from the Employee's paychecks on another party's behalf. *See* 11 U.S.C. §§ 541(b)(1), (d); 26 U.S.C. §§ 6672, 7501(a); *Sharon Steel Corp.*, 41 F.3d at 95–97 (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a constructive trust in the withheld income taxes regardless of whether such funds were segregated).

57.     The Debtor, therefore, respectfully requests that the Court recognize that the Withholding Obligations are not property of the Debtor's estate and, regardless of whether the Debtor collected the amounts prior to the Petition Date, authorize, but not direct, the Debtor to transmit such monies to the proper parties in the ordinary course of business.

**II.     Payment of the Key Personnel Compensation and Employee Benefits Is Proper Pursuant to Section 363(b) of the Bankruptcy Code and the Doctrine of Necessity.**

58.     Section 363(c)(1) of the Bankruptcy Code expressly grants the Debtor the authority to "enter into transactions . . . in the ordinary course of business" and "use property of the estate in the ordinary course of business without notice or a hearing."  Therefore, the Debtor believes it is permitted to pay all postpetition amounts due pursuant to the Key Personnel Compensation and Employee Benefits as such actions are in the ordinary course of the Debtor's business.

59.     Out of an abundance of caution, however, the Debtor seeks entry of an order granting the relief requested herein to avoid any disruptions to its business operations.

60.     The relief requested herein may be granted by the Court pursuant to sections 363(b) and 105(a) of the Bankruptcy Code.  Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Under section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999)

(citations omitted) (requiring that the debtor show a "sound business purpose" to justify its actions under section 363 of the Bankruptcy Code); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987).  Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

61.     In addition, the Court may authorize payment of prepetition claims in appropriate circumstances under section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of a bankruptcy court, empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  The Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of the Key Personnel Compensation and the Employee Benefit Obligations under the "necessity of payment" rule (also referred to as the "doctrine of necessity").

62.     The United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981). The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor.  *Id*.  (stating a court may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment").

63.     The necessity of payment doctrine is designed to foster a debtor's rehabilitation, which courts have recognized is "the paramount policy and goal of Chapter 11." *In re Ionosphere*

24

*Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of toolmakers as "necessary to avert a serious threat to the Chapter 11 process").

64.     Payment of the Key Personnel Compensation and the Employee Benefit Obligations is warranted under this authority and the facts of this chapter 11 case.  The Employee and the Independent Contractor rely on Key Personnel Compensation, and the Employee relies on the Employee Benefits, to satisfy daily living expenses and maintain ordinary course benefits coverage.  Consequently, the Employee and the Independent Contractor will be exposed to significant financial difficulties if the Debtor is not permitted to honor obligations for unpaid Key Personnel Compensation and the Employee Benefits.  Additionally, continuing ordinary course benefits through the Administrative Services Agreements will provide stability for the Employee and minimize the adverse effect of the commencement of this chapter 11 case on the Debtor's ongoing business operations.

65.     Moreover, the Debtor has an extremely limited personnel base, consisting of one Employee and one Independent Contractor.  The Employee provides day-to-day support necessary to administer the Debtor's business and chapter 11 case, and the Independent Contractor provides

litigation-support services, including institutional knowledge that may assist the Debtor and its advisors in addressing issues related to talc claimants and other litigation-related matters. If the Debtor is unable to pay Key Personnel Compensation and continue the Employee Benefits in the ordinary course, the Employee and the Independent Contractor may face financial hardship and may seek other employment or engagement opportunities. The loss of either individual would deprive the Debtor of important knowledge and support at a critical stage of this chapter 11 case, disrupt the Debtor's ability to administer its business and litigation-related matters efficiently, and impair value to the detriment of the estate and stakeholders. Accordingly, the Debtor believes that payment of the prepetition obligations related to Key Personnel Compensation and the Employee Benefits is necessary and appropriate to preserve continuity, maintain access to critical knowledge and support, and protect estate value.

66.     Indeed, courts in this district have recognized the importance of satisfying employee obligations in cases requesting relief similar to that requested here. *See, e.g.*, *In re W. Marine, Inc.*, No. 26-10794 (KBO) (Bankr. D. Del. May 19, 2026) [Docket No. 63] (authorizing debtors to satisfy prepetition wages, salaries, other compensation, and reimbursable expenses, and to continue employee benefits programs on an interim basis); *In re Freedom Forever LLC*, No. 26-10522 (BLS) (Bankr. D. Del. Apr. 17, 2026) [Docket No. 25] (authorizing debtor to satisfy prepetition wages, salaries, commissions, and other compensation, and to continue employee benefits programs on an interim basis); *In re By Hotel SPE-3 LLC*, No. 26-10324 (JKS) (Bankr. D. Del. Apr. 7, 2026) [Docket No. 91] (authorizing debtors to pay prepetition wages, salaries, and other compensation, and to continue employee benefits programs on a final basis); *In re Glenwood Caverns Holdings LLC*, No. 26-10166 (LSS) (Bankr. D. Del. Mar. 11, 2026) [Docket No. 93] (authorizing debtor to satisfy prepetition wages, salaries, other compensation, and reimbursable

expenses, and to continue employee benefits programs on a final basis); *In re Avenger Flight Grp., LLC*, No. 26-10183 (MFW) (Bankr. D. Del. Mar. 9, 2026) [Docket No. 141] (same). Accordingly, the Debtor respectfully requests that the Court authorize, but not direct, the Debtor to pay and continue the Key Personnel Compensation and the Employee Benefits in the ordinary course of business and consistent with past practice.

### III. The Debtor's Banks Should be Authorized to Honor Checks and Electronic Funds Transfers.

67. The Debtor further requests that the Court (a) authorize all applicable financial institutions (collectively, the "Banks") to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the relief sought herein to the extent that the Debtor has sufficient funds on deposit in its accounts with the Banks, whether such checks were presented or electronic requests were submitted before or after the Petition Date, and (b) authorize the Banks to rely on the Debtor's designation of any particular check or electronic payment request as appropriate pursuant to this Motion without any duty of further inquiry and without liability for following the Debtor's instructions. The Debtor anticipates having sufficient funds to pay the amounts described herein. Therefore, the Debtor respectfully requests that the Court authorize all applicable financial institutions, when requested by the Debtor, to receive, process, honor, and pay any and all checks, wire transfer requests, or automated clearing house transfers in respect of the relief requested in this Motion.

### THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

68. The Debtor asserts that immediate relief is necessary to avoid immediate and irreparable harm. Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one (21) days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, entry of the proposed

Interim Order is integral to the Debtor's ability to successfully transition into chapter 11 and effectuate a successful reorganization. Specifically, the relief requested is necessary to avoid a severe disruption of the Debtor's operations and negotiations with key stakeholders at this critical juncture and, in turn, to preserve and maximize the value of the Debtor's estate for the benefit of all stakeholders. Accordingly, the Debtor respectfully submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully requests that the Court approve the relief requested in this Motion.

## REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS

69.    The Debtor requests a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h). As explained above and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtor's ongoing operations and value-maximization process. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## RESERVATION OF RIGHTS

70.    Nothing contained herein or any action taken pursuant to the relief requested is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor or any party in interest's rights to dispute the amount of, basis for, or validity of any claim or interest under applicable law or nonbankruptcy law; (c) a promise or requirement to pay any claim or other obligation; (d) a waiver of the Debtor or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or granting of approval for assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability,

or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtor or any party in interest's rights to subsequently dispute such claim.

## **NOTICE**

71.     Notice of this Motion has been provided by email, facsimile, or first-class mail to: (a) the Office of the United States Trustee for the District of Delaware; (b) the United States Attorney's Office for the District of Delaware; (c) the firms listed on the Debtor's list of the top twenty (20) law firms with the most significant representations of Represented Litigation Claimants; (d) counsel to the prepetition representative for future talc and asbestos claims; (e) the Internal Revenue Service; (f) counsel to the Non-Debtor Affiliates; (g) the attorneys general of the states in which the Debtor does business; and (h) all parties entitled to notice pursuant to Local Rules 2002-1(b) and 9013-1(m).  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtor respectfully requests entry of the Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested herein and granting such other relief as is just and proper.

Dated: August 2, 2026
Wilmington, Delaware


/s/ Jason S. Levin

| **MORRIS JAMES LLP** | **SIDLEY AUSTIN LLP** |
|---|---|
| Eric J. Monzo (DE Bar No. 5214) | Thomas R. Califano (*pro hac vice* pending) |
| Jason S. Levin (DE Bar No. 6434) | William E. Curtin (*pro hac vice* pending) |
| Samantha L. Rodriguez (DE Bar No. 7524) | Anne G. Wallice (*pro hac vice* pending) |
| 3205 Avenue North Boulevard, Suite 100 | 787 Seventh Avenue |
| Wilmington, Delaware 19803 | New York, New York 10019 |
| Telephone: (302) 888-6800 | Telephone: (212) 839-5300 |
| Facsimile: (302) 571-1750 | Facsimile: (212) 839-5599 |
| E-mail: emonzo@morrisjames.com | Email: tom.califano@sidley.com |
| jlevin@morrisjames.com | wcurtin@sidley.com |
| srodriguez@morrisjames.com | anne.wallice@sidley.com |
| *Proposed Co-Counsel to the Debtor and Debtor in Possession* | *Proposed Co-Counsel to the Debtor and Debtor in Possession* |