**Exhibit C**

**Vivos Administrative Services Agreement**

**Execution Version**

## ADMINISTRATIVE SERVICES AGREEMENT

THIS ADMINISTRATIVE SERVICES AGREEMENT (this "Agreement"), is entered into as of December 3, 2023, by and among (i) Vivos Holdings, LLC, a Delaware limited liability company ("Provider"), and (ii) Vi-Jon, LLC, a Delaware limited liability company ("Recipient"). Each of Provider and Recipient are sometimes individually referred to as a "Party" and, collectively, as the "Parties".

### RECITALS

A.      Recipient is in the business of manufacturing and producing a broad range of private brand and Germ-X® brand health, beauty, and personal care products for sale to retail and institutional customers in North America.

B.      Vi-Jon Holding, Inc., a Delaware corporation and 100% employee-owned ESOP holding company headquartered in St. Louis, Missouri ("Holdings"), has developed a plan (the "Plan") to reorganize its business in order to create a more effective framework to accelerate innovation, drive greater efficiencies across existing manufacturing and distribution networks, increase growth and maximize the potential value for all of its employee-owners.

C.      In connection with the Plan, Holdings formed Provider on June 28, 2023 to serve as a consumer packaged goods holding company.

D.      Following the reorganization contemplated by the Plan, Provider will directly or indirectly own: (i) Consumer Product Partners, LLC, a Delaware limited liability company and leading manufacturer of private brand liquid-fill household and personal care products for sale to retail and industrial customers and a provider of contract manufacturing services to other consumer products companies; (ii) UpLift, a Delaware limited liability company and focused, innovative, entrepreneurial branded health, beauty, and personal care company, offering consumers a broad range of products under the Germ-X® and other value-brand names; (iii) Recipient, a provider of private brand dry goods products; and (iv) INSPR Labs, LLC, a Delaware limited liability company and specialized provider of quality assurance (QA) and research and development (R&D) services ("INSPR Labs").

E.      Each of Provider and Recipient is classified as an entity disregarded as separate from its direct or indirect owner, Holdings, within the meaning of Treasury Regulation Section 301.7701-3(b)(1)(ii) for federal and state income tax purposes.

F.      Following the reorganization contemplated by the Plan, Provider desires to provide to Recipient certain general and administrative services, and Recipient desires to receive such services, on the terms and conditions set forth in this Agreement.

### AGREEMENTS

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual promises, covenants, representations, warranties, conditions and agreements hereinafter expressed, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## ARTICLE 1
## SERVICES

Section 1.1 <u>Services</u>. During the Term, Provider shall cause its employees and agents to provide to Recipient the services as are set forth on <u>Exhibit A</u> (each, a "<u>Service</u>" and collectively, the "<u>Services</u>"). Recipient may, during the Term of this Agreement, request that Provider provide Recipient with other assistance and services and Provider may, but shall not be obligated to, provide such other assistance and services on such terms as may be agreed between the Parties. The Parties acknowledge and agree that it may not be practicable to describe all aspects of a particular Service in detail. Consequently, each Service that is generally included on <u>Exhibit A</u> will be provided in accordance with the applicable terms of this Agreement and consistent with the past practices of Provider in the operation of the relevant business, even where all aspects regarding the provision of a particular Service are not described in detail.

Section 1.2 <u>Term</u>. The term of this Agreement (the "<u>Term</u>") shall commence as of the date of this Agreement and will continue until either Party provides written notice of termination to the other Party.

Section 1.3 <u>Standard of Care</u>. In providing the Services set forth in this Agreement, Provider shall utilize a similar standard of care as it utilizes in operating similar aspects of its own business. Each Party hereto shall instruct its employees and agents to reasonably cooperate with the other Party hereto and its employees and agents in connection with the Services such that the Services shall be performed, maintained and made available to Recipient during the Term of this Agreement without material disruption. Each Party hereto shall comply with all laws, legislation, rules, regulations and governmental requirements applicable to its performance of its obligations hereunder.

Section 1.4 <u>Independent Contractors</u>. Provider is, and at all times during the term hereof shall remain, an independent contractor. Accordingly, nothing in this Agreement shall constitute evidence that the persons providing the Services are or may be deemed to be employees of Recipient, and neither Provider, nor its affiliates, agents or employees, shall have any power to bind or obligate Recipient contractually for any purpose whatsoever except as set forth in this Agreement. Nothing in this Agreement shall constitute evidence that Recipient or its employees, agents or representatives receiving the Services are or may be deemed to be employees of Provider, and neither the Party receiving the Services, nor its agents or employees, shall have any power to bind or obligate Provider contractually for any purpose whatsoever except as set forth in this Agreement.

Section 1.5 <u>Access and Provision of Information</u>. During the Term, each Party will provide the other Party and its authorized representatives reasonable access to such personnel and assets as are reasonably necessary to the performance of the Services.

## ARTICLE 2
## LIMITATION OF LIABILITY

Section 2.1 <u>Indemnification and Limitation of Liability of Provider</u>. Neither Provider, nor any of its employees or agents will be liable to Recipient or any other person or entity,

including any third party, for, and Recipient shall indemnify, hold harmless and release and forever discharge Provider and such other parties from, any and all claims, liabilities, actions, suits, judgments, losses, injuries, damages, costs and expenses arising out of or connected with any act or omission of Provider, or its employees or agents, pursuant to this Agreement or with respect to the Services, other than to the extent primarily arising out of the gross negligence or the willful misconduct of Provider or its employees or agents; *provided,* that in no event will the aggregate liability of Provider to Recipient or to any other person or entity, including any third party, exceed the amount of fees paid by Recipient to Provider as referred to in Section 3.4.

**ARTICLE 3**
**PAYMENT FOR SERVICES AND COSTS**

Section 3.1    <u>Payments</u>.  All amounts owed for Services will be charged via a weekly fee, or monthly fee, or as agreed upon by the parties, as described in <u>Exhibit A</u>.

Section 3.2    <u>Invoicing</u>.  Provider will account in good faith for the costs of providing the Services to Recipient during each fiscal week, fiscal month, or as agreed upon by the parties, based on (a) the actual Services provided by the Provider to Recipient and (b) the Provider's costs prorated or properly allocable to providing such Services.  Provider will invoice Recipient for applicable Services in the manner agreed to by the Parties.  Upon mutual agreement of the Parties, the form and timing of invoices and orders may be changed at any time after the date hereof.

Section 3.3    <u>Payment Terms</u>.  Payment will be made by Recipient for such Services in accordance with Recipient's payment practices in effect from time to time except for any portion of such bill which is being disputed in good faith by Recipient.

Section 3.4    <u>Price of Services</u>.  The Services will be provided at the rates as agreed upon by the parties for each function for which the Services are provided.

Section 3.5    <u>Annual Review and Adjustment</u>.  On an annual basis, or such other period as the Parties shall mutually determine, the Parties shall review the Services billed to Recipient and make any adjustments as the Parties deem necessary or advisable.

Section 3.6    <u>Taxes</u>.  All sales, use and other taxes, levies and charges (other than taxes based on net income or net profits) imposed by applicable taxing authorities with respect to the provision of Services hereunder shall be borne by Recipient.  If Provider is required to pay any amount of such taxes, levies or charges in connection with the provision of Services hereunder, Recipient shall promptly reimburse Provider for such amount.  Provider and Recipient agree to use commercially reasonable efforts to mitigate, reduce or eliminate any tax that could be imposed with respect to the transactions contemplated by this Agreement (including preparing and furnishing, or obtaining from any taxing authority, any certificate, form, or other document as may be necessary to mitigate, reduce or eliminate any such tax).

## ARTICLE 4
## MISCELLANEOUS

Section 4.1    Interpretation.  The headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

Section 4.2    Counterparts.  This Agreement may be executed in one or more counterparts (including by facsimile or .pdf attachment to e-mail), each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

Section 4.3    Waiver.  No waiver of any of the provisions hereof shall be effective unless in writing and signed by the Party to be charged with such waiver.  No waiver shall be deemed a continuing waiver or waiver in respect of any subsequent breach or default, whether of similar or different nature, unless so expressly stated in writing.  No delay in the enforcement of this Agreement by a Party hereto shall constitute a waiver of this Agreement.

Section 4.4    Modification.  This Agreement may not be orally cancelled, changed, modified or amended, and no cancellation, change, modification or amendment shall be effective or binding, unless in writing and signed by all of the Parties to this Agreement.

Section 4.5    Severability.  If any provision of this Agreement is found to be void or unenforceable by a court of competent jurisdiction, the remaining provisions of this Agreement shall nevertheless be binding upon the Parties hereto with the same effect as though the void or unenforceable part had been severed and deleted.

Section 4.6    Miscellaneous.  This Agreement and all Exhibits hereto: (a) constitute the entire agreement of the Parties hereto as to the subject matter hereof and supersede all other prior agreements and understandings, both written and oral, among the Parties hereto with respect to the subject matter hereof; (b) are not intended to and shall not confer upon any other person or business entity any rights or remedies with respect to the subject matter hereof; (c) shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and permitted assigns; and (d) shall not be assigned by operation of law or by the Parties hereto without the prior written consent of the other Party hereto and such attempted assignment shall be null and void.

Section 4.7    Governing Law.  This Agreement, and all disputes, controversies or claims arising out of or relating to this Agreement or a breach hereof, shall be governed by and construed in accordance with the laws of the State of Delaware, excluding its conflicts of laws provisions.

*    *    *    *    *

IN WITNESS WHEREOF, the Parties hereto have caused this Administrative Services Agreement to be executed by their duly authorized representatives as of the date first written above.

Vivos Holdings, LLC

By:_____
Name: Gregory Billhartz
Title: President


Vi-Jon, LLC

By:_____
Name: Gregory Billhartz
Title: President and Chief Strategy Officer

*[Signature Page to Administrative Services Agreement]*

<u>Exhibit A</u>

<u>Services / Annualized Pricing</u>

The following schedule details the range of services to be provided by Vivos Holdings, LLC ("<u>Provider</u>") to Vi-Jon, LLC ("<u>Recipient</u>") under the Administrative Services Agreement:

1. **General Management Services:** Provider will supply comprehensive managerial services to the Recipient.  This includes but is not limited to administrative supervision, expert business guidance, strategic planning support, and assistance with everyday business operations.
2. **Human Resources:** Provider's HR services will encompass the management of personnel-related matters such as talent acquisition, employee onboarding and training, managing employee relations, administration of benefits, and ensuring compliance with employment laws and regulations.
3. **Finance and Accounting:** Provider will offer a broad range of financial services.  This includes, but is not limited to, financial management and oversight, budget preparation and monitoring, comprehensive reporting, bookkeeping, payroll processing, and tax management services.
4. **Information Technology:** Provider will supply IT services including but not limited to network management, hardware and support, software maintenance, data security and integrity measures, and providing technical support as required.
5. **Legal and Regulatory Compliance:** Provider will assist in upholding adherence to applicable laws and regulatory standards, offering a variety of legal advisory services when needed.
6. **Risk Management:** Provider will provide risk management services, including identifying potential risks, developing risk mitigation strategies, and managing any insurance policies.
7. **Corporate Governance and Secretarial Services:** Provider will provide services related to corporate governance, such as ensuring compliance with corporate laws and regulations, maintaining corporate records, arranging board meetings, and other secretarial tasks.
8. **Ancillary Services:** Provider will also deliver any other services ancillary to the above and which are reasonably required for the Recipient's business operations.  These services will be mutually agreed upon by both parties.

Recipient will be charged a weekly fee, monthly fee, or as agreed upon by the parties.  The costs will be determined based on the specific services and level of support required by Recipient, calculated from our weekly or monthly, as agreed upon by the parties, SG&A cost assumptions as allocated to that entity, or as otherwise mutually agreed upon by the parties.  These costs will be subject to periodic review and potential adjustments between the Provider and Recipient to account for inflation or other pertinent factors.  Payment processing schedules to be determined.

**FIRST AMENDMENT TO THE ADMINISTRATIVE SERVICES AGREEMENT**

This First Amendment (this "Amendment"), dated as of December 28, 2023 (the "Effective Date"), to the Administrative Services Agreement, dated December 3, 2023 (the "Services Agreement"), by and between Vivos Holdings, LLC, a Delaware limited liability company ("Provider"), and Vi-Jon, LLC, a Delaware limited liability company ("Recipient"). Capitalized terms used but not defined herein shall have the definition ascribed to such term in the Services Agreement.

**Recitals**

A.      WHEREAS, Vi-Jon Holding, Inc., a Delaware corporation and a 100% employee-owned ESOP holding company headquartered in St. Louis, Missouri, has developed a plan to reorganize its business in order to create a more effective framework to accelerate innovation, drive greater efficiencies across existing manufacturing and distribution networks, increase growth and maximize the potential value for all of its employee-owners (the "Restructuring").

B.      WHEREAS, following the Restructuring, Provider desires to provide to Recipient certain general and administrative services, and Recipient desires to receive such services, on the terms and conditions set forth in the Services Agreement.

C.      WHEREAS, Provider and Recipient desire to amend the Services Agreement in accordance with Section 4.4 of the Services Agreement, as set forth below.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties hereby agree as follows, effective as of the Effective Date:

1.  Section 1.2 of the Services Agreement is hereby amended and restated in its entirety as follows:

"Section 1.2      Term and Termination. The term of this Agreement shall commence as of the date of this Agreement and shall continue for a period of ten years (the "Initial Term"), unless sooner terminated pursuant to this Section 1.2. Upon the expiration of the Initial Term, the Agreement shall automatically renew for subsequent one-year periods (each a "Renewal Term"), unless either party provides written notice to the other party of its intent not to renew. The terms and conditions of this Agreement during any Renewal Term shall be the same as those in effect at the time of renewal. Either party may terminate this Agreement, effective upon written notice to the other party (the "Defaulting Party"), if the Defaulting Party (a) materially breaches this Agreement, and such breach is incapable of cure, or with respect to a material breach capable of cure, the Defaulting Party does not cure such breach within 30 days after receipt of written notice of such breach; (b) becomes insolvent; (c) admits its inability to pay its debts generally as they become due; (d) becomes subject to any bankruptcy proceeding which is not dismissed or vacated within 90 days after filing; (e) is dissolved or liquidated; (f) makes a general assignment for the benefit of creditors; or (g) has a receiver, trustee, custodian, or similar agent appointed by court order to take charge of or sell any material portion of its property or business. Without prejudice and in addition to all other lawful rights and remedies, the parties hereto may terminate this Agreement at any time and for any reason by mutual written consent."

2.  Article 2 of the Services Agreement is hereby amended and restated in its entirety as follows:

**"ARTICLE 2**
**INDEMNIFICATION; LIMITATION OF LIABILITY**

Section 2.1     General. Each Party ("Indemnifying Party") shall indemnify, defend, and hold harmless the other Party and its officers, directors, managers, employees, agents, affiliates, successors, and permitted assigns ("Indemnified Party") against any and all losses, damages, liabilities, deficiencies, claims, actions, judgments, settlements, interest, awards, penalties, fines, costs, or expenses of whatever kind, including reasonable attorneys' fees and costs (collectively, "Losses"), arising out of or resulting from any claim of a third party arising out of or occurring in connection with: (a) bodily injury, death of any person or damage to real or tangible, personal property resulting from Indemnifying Party's willful, fraudulent or grossly negligent acts or omissions; or (b) Indemnifying Party's gross negligence, willful misconduct, or material breach of this Agreement, including but not limited to material breach of any representation or warranty made by Indemnifying Party in this Agreement.

Section 2.2     Intellectual Property Infringement. Provider shall indemnify, defend, and hold harmless the Recipient from and against all Losses based on a claim that any of the Services or Recipient's receipt or use thereof infringes any Intellectual Property Right of a third party arising under the laws of the United States; provided, however, that Provider shall have no obligations under this Section 2.2 with respect to claims to the extent arising out of (a) any instruction, information, designs, specifications, or other materials provided by Recipient in writing to Provider; (b) Recipient's use of the Services in combination with any materials or equipment not supplied to Recipient or specified by Provider in writing; or (c) any modifications or changes made to the Services other than by Provider. For purposes of this Section 2.2, "Intellectual Property Rights" means any intellectual property rights, including copyrights, patents, patent disclosures and inventions (whether patentable or not), trademarks, service marks, trade secrets, know-how, and other confidential information, trade dress, trade names, logos, corporate names and domain names, together with all of the goodwill associated therewith, derivative works and all other rights.

Section 2.3     Limitation of Liability. EXCEPT FOR OBLIGATIONS TO MAKE PAYMENT, INDEMNIFICATION OBLIGATIONS, LIABILITY FOR BREACH OF CONFIDENTIALITY, OR LIABILITY FOR INFRINGEMENT OF INTELLECTUAL PROPERTY RIGHTS, IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR: (A) ANY LOSS OF USE, REVENUE, OR PROFIT OR FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, EXEMPLARY, SPECIAL, OR PUNITIVE DAMAGES WHETHER ARISING OUT OF BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, REGARDLESS OF WHETHER SUCH DAMAGE WAS FORESEEABLE AND WHETHER OR NOT SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES; OR (B) DIRECT DAMAGES OF MORE THAN THE AGGREGATE AMOUNTS PAID OR PAYABLE TO PROVIDER IN THE TWELVE MONTH PERIOD PRECEDING THE EVENT GIVING RISE TO THE CLAIM."

3.  Exhibit A of the Services Agreement is hereby amended to add the following:

    "Provider will be charging Recipient for various services including Finance, Information Technology, Human Resources, Regulatory, and Legal based upon proportional net sales. The amount of $840,000 annually will be used at the start the Agreement and will be reviewed and updated periodically."

4.  Except as specifically amended in this Amendment, the Services Agreement remains in effect without change. All references to the Services Agreement set forth therein shall hereafter be deemed to refer to the Services Agreement as amended by this Amendment.

[*Signature Page Follows*]

IN WITNESS WHEREOF, each of the parties has caused this Amendment to be executed in duplicate originals by its duly authorized representatives.

**PROVIDER:**

**Vivos Holdings, LLC**

By: _____

Name: Gregory Billhartz

Title: President

**RECIPIENT:**

**Vi-Jon, LLC**

By: _____

Name: Gregory Billhartz

Title: President and Chief Strategy Officer

[*Signature Page to First Amendment to the Administrative Services Agreement*]

**SECOND AMENDMENT TO THE ADMINISTRATIVE SERVICES AGREEMENT**

This Second Amendment (this "Amendment"), dated as of August 13, 2025 (the "Effective Date"), to the Administrative Services Agreement, dated December 3, 2023, as amended by that certain First Amendment dated December 28, 2023 (as amended, the "Services Agreement"), by and between Vivos Holdings, LLC, a Delaware limited liability company ("Provider"), and Vi-Jon, LLC, a Delaware limited liability company ("Recipient"). Capitalized terms used but not defined herein shall have the definition ascribed to such term in the Services Agreement.

### Recitals

A.    WHEREAS, Vi-Jon Holding, Inc., a Delaware corporation and a 100% employee-owned ESOP holding company headquartered in St. Louis, Missouri, has developed a plan to reorganize its business in order to create a more effective framework to accelerate innovation, drive greater efficiencies across existing manufacturing and distribution networks, increase growth and maximize the potential value for all of its employee-owners (the "Restructuring").

B.    WHEREAS, following the Restructuring, Provider provides to Recipient certain general and administrative services, and Recipient receives such services, on the terms and conditions set forth in the Services Agreement.

C.    WHEREAS, Provider and Recipient desire to amend the Services Agreement in accordance with Section 4.4 of the Services Agreement, as set forth below.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties hereby agree as follows, effective as of the Effective Date:

### Agreement

1. **Exhibit A Update.** The section of Exhibit A of the Services Agreement titled "Selling General and Administrative Costs (SG&A)" is hereby amended and restated in its entirety as follows:

"**Selling General and Administrative Costs (SG&A):**

Provider will be charging Recipient for various services including Finance, Information Technology, Human Resources, Regulatory, and Legal based upon proportional net sales. The amount of $692,000 annually is currently in effect under this Agreement. Effective October 1, 2025, this amount shall be reduced to $600,000 annually. These amounts will be reviewed and updated periodically."

2. **Continued Effect.** Except as specifically amended in this Amendment, the Services Agreement remains in effect without change. All references to the Services Agreement set forth therein shall hereafter be deemed to refer to the Services Agreement as amended by this Amendment.

3. **Counterparts.** This Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Amendment delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Amendment.

IN WITNESS WHEREOF, each of the parties has caused this Amendment to be executed in duplicate originals by its duly authorized representatives.

**PROVIDER:**

**Vivos Holdings, LLC**

By: _____
Name: Gregory Billhartz
Title: President

**RECIPIENT:**

**Vi-Jon, LLC**

By: _____
Name: Gregory Billhartz
Title: Vice President

## THIRD AMENDMENT TO THE ADMINISTRATIVE SERVICES AGREEMENT

This Third Amendment to the Administrative Services Agreement (this "Amendment") is dated as of [_____], 2026, but effective as of January 1, 2026 (the "Effective Date") and amends that certain Administrative Services Agreement dated as of December 3, 2023 (the "Original Agreement"), as amended by that certain First Amendment to the Administrative Services Agreement dated as of December 28, 2023 (the "First Amendment"), and that certain Second Amendment to the Administrative Services Agreement dated as of August 13, 2025 (the "Second Amendment"), by and between Vivos Holdings, LLC, a Delaware limited liability company ("Provider"), and Vi-Jon, LLC, a Delaware limited liability company ("Recipient"). The Original Agreement, as amended by the First Amendment and the Second Amendment, is referred to herein as the "Services Agreement". Capitalized terms used but not defined herein have the meanings given to them in the Services Agreement.

### RECITALS

**A.** Provider and Recipient are parties to the Services Agreement, pursuant to which Provider provides certain general and administrative services to Recipient.

**B.** Pursuant to the First Amendment, the parties amended the term, indemnification and limitation of liability provisions of the Services Agreement and added an annualized allocation for certain Services.

**C.** Pursuant to the Second Amendment, the parties amended and restated the Selling General and Administrative Costs (SG&A) section of Exhibit A to the Services Agreement to reflect then-current service allocations between Provider and Recipient.

**D.** Provider and Recipient desire to amend the Services Agreement to reflect the updated 2026 administrative service allocation between Provider and Recipient.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties agree as follows:

### AGREEMENT

**1. Exhibit A Update.** The section of Exhibit A of the Services Agreement titled "Selling General and Administrative Costs (SG&A)" is hereby amended and restated in its entirety as follows:

"Selling General and Administrative Costs (SG&A):

Provider will be charging Recipient for various services including Finance, Information Technology, Human Resources, Regulatory, and Legal based upon proportional net sales or such other allocation methodology as the parties may mutually determine. Effective as of January 1, 2026, the amount of $572,000 annually will be used under the Services Agreement and will be reviewed and updated periodically."

**2. Continued Effect.** Except as specifically amended in this Amendment, the Services Agreement remains in full force and effect. All references to the Services Agreement will be deemed to refer to the Services Agreement as amended by this Amendment.

**3. Counterparts; Electronic Signatures.** This Amendment may be executed in counterparts, each of which will be deemed an original, but all of which together will constitute one and the same agreement. A signed copy of this Amendment delivered by facsimile, e-mail, DocuSign or other means of electronic transmission will be deemed to have the same legal effect as delivery of an original signed copy of this Amendment.

IN WITNESS WHEREOF, each of the parties has caused this Amendment to be executed by its duly authorized representative as of the date first written above.

**PROVIDER:**

Vivos Holdings, LLC

By: _____
Name: Gregory Billhartz
Title: President

**RECIPIENT:**

Vi-Jon, LLC

By: _____
Name: Mackenzie Shea
Title: Chief Restructuring Officer

# Third Amendment - Administrative Services Agreement - Vivos to Vi-Jon 20260609

Final Audit Report                                    2026-06-09

| | |
|---|---|
| Created: | 2026-06-09 |
| By: | Emily Miller (emiller1@vivosholdings.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAABI0WZx4BGYDxUlsSgZn77_QtQRUSweUW |

## "Third Amendment - Administrative Services Agreement - Vivos to Vi-Jon 20260609" History

📄 Document created by Emily Miller (emiller1@vivosholdings.com)
2026-06-09 - 8:23:50 PM GMT

✉ Document emailed to Gregory Billhartz (gbillhartz@emprisegroup.com) for signature
2026-06-09 - 8:23:55 PM GMT

✉ Document emailed to Mackenzie Shea (mshea@thinkbrg.com) for signature
2026-06-09 - 8:23:55 PM GMT

📄 Email viewed by Mackenzie Shea (mshea@thinkbrg.com)
2026-06-09 - 8:24:06 PM GMT

✒ Document e-signed by Mackenzie Shea (mshea@thinkbrg.com)
Signature Date: 2026-06-09 - 9:19:45 PM GMT - Time Source: server - Signature Appearance Selected: IMAGE

📄 Email viewed by Gregory Billhartz (gbillhartz@emprisegroup.com)
2026-06-09 - 9:26:08 PM GMT

✒ Document e-signed by Gregory Billhartz (gbillhartz@emprisegroup.com)
Signature Date: 2026-06-09 - 9:37:47 PM GMT - Time Source: server - Signature Appearance Selected: IMAGE

✅ Agreement completed.
2026-06-09 - 9:37:47 PM GMT



VIVOS HOLDINGS | Powered by Adobe Acrobat Sign