**Exhibit A**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| VI-JON, LLC,[1] | Case No. 26-11216 (MFW) |
| Debtor. | |
| | **Ref: Docket No. _____** |

**INTERIM ORDER (I) AUTHORIZING THE**
**DEBTOR TO (A) CONTINUE USE OF ITS EXISTING**
**CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND**
**BUSINESS FORMS AND (B) PAY CERTAIN OBLIGATIONS**
**RELATED THERETO, (II) AUTHORIZING POSTPETITION**
**INTERCOMPANY TRANSACTIONS, (III) APPROVING THE AMENDED**
**KEEPWELL AGREEMENT, (IV) EXTENDING THE TIME PERIOD**
**TO COMPLY OR WAIVING CERTAIN REQUIREMENTS OF SECTION 345(b)**
**OF THE BANKRUPTCY CODE, AND (V) GRANTING RELATED RELIEF**

Upon the motion ("Motion")[2] of Vi-Jon, LLC, as debtor and debtor in possession (the "Debtor"), for entry of an interim order (this "Interim Order") (i) authorizing, but not directing, the Debtor to (a) continue use of its existing cash management system, bank accounts, and business forms and (b) pay certain obligations related thereto, (ii) authorizing, but not directing, the Debtor to continue postpetition Intercompany Transactions, (iii) approving the Amended Keepwell Agreement and authorizing, but not directing, the Debtor to perform thereunder, including by making capital calls and receiving funding and using proceeds in accordance with the Budget, (iv) extending the time period to comply or waiving certain requirements under section 345(b) of the Bankruptcy Code and the U.S. Trustee Guidelines, and

---

[1] The Debtor in this chapter 11 case is Vi-Jon, LLC.  The last four digits of the Debtor's federal tax identification number are 8002.  The Debtor's service address is 8800 Page Ave., St. Louis, MO 63114.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the Motion.

(v) granting related relief, each as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and this Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this proceeding and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and appropriate notice of and opportunity for a hearing on the Motion having been given; and the relief requested in the Motion being in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The relief requested in the Motion is GRANTED on an interim basis as set forth herein.

2.      The final hearing on the Motion shall be held on _____, 2026 at _____ (prevailing Eastern Time) (the "<u>Final Hearing</u>").  Any objections or responses to entry of the proposed final order shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on _____, 2026 and shall be served on (a) the Debtor, c/o BRG, 225 Franklin Street, Suite 3100, Boston, Massachusetts 02110, Attn.: Mackenzie Shea, Chief Restructuring Officer (MShea@thinkbrg.com); (b) proposed counsel to the Debtor, (i) Sidley Austin LLP, 787 Seventh Avenue, New York, New York 10019 and 2323 Cedar Springs Road, Suite 2600, Dallas, Texas 75201, Attn.: Chelsea McManus (cmcmanus@sidley.com) and Chang Liu (chang.liu@sidley.com), and (ii) Morris James LLP, 3205 Avenue North Boulevard, Suite 100,

Wilmington, Delaware 19803, Attn.: Eric J. Monzo and Jason S. Levin (emonzo@morrisjames.com; jlevin@morrisjames.com); (c) counsel to the Non-Debtor Affiliates, Bryan Cave Leighton Paisner LLP, One Metropolitan Square, 211 North Broadway, Suite 3600, St. Louis, Missouri 63102 and 161 N. Clark Street, Suite 4300, Chicago, Illinois 60601, Attn.: Justin Winerman, Laurence Frazen, and Bart Wall (justin.winerman@bclplaw.com; larry.frazen@bclplaw.com; and bart.wall@bclplaw.com); (d) counsel to any statutory committee appointed in the chapter 11 case; and (e) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn.: Jonathan W. Lipshie, Esq. (jon.lipshie@usdoj.gov).  In the event no objections to entry of a final order on the Motion are timely received, this Court may enter a final order without need for the Final Hearing.

3.      The Debtor is authorized, but not directed, to: (a) designate, maintain, and continue to use the Cash Management System as described in the Motion and honor any obligations related to the use thereof; (b) designate, maintain, close, and continue to use any or all of its existing Bank Accounts, including, but not limited to, the Bank Accounts identified in the Motion, in the names and with the account numbers existing immediately before the Petition Date; (c) deposit funds in and withdraw funds from the Bank Accounts by all the usual means, including checks, wire transfers, ACH transfers, electronic funds transfers, and other debits or electronic means; and (d) treat its prepetition Bank Accounts, for all purposes, as debtor-in-possession accounts; *provided* that in the case of each of (a) through (d), such action is taken in the ordinary course of business and consistent with past practice.

4.      The Debtor is authorized, but not directed, to enter into and engage in the Intercompany Transactions and to take any actions related thereto on the same terms as, and materially consistent with, the Debtor's operation of the business in the ordinary course during the

prepetition period, and to reconcile amounts owed between the Debtor and the Non-Debtor Affiliates, including netting and setting off obligations arising from the Intercompany Transactions, whether arising prepetition or postpetition, in the ordinary course of business, as determined by the Debtor in its business judgment; *provided* that, postpetition Intercompany Transactions shall be reconciled and settled through weekly cash remittances and final monthly true-ups as set forth in the Motion; *provided, further*, that, to the extent any Intercompany Transaction constitutes performance under or payment on account of the Shared Services Agreements, such relief is subject to entry of an order approving the Debtor's continued operation under the Shared Services Agreements.

5.      The Debtor shall continue to maintain current records with respect to all transfers of cash so that all transactions, including the Intercompany Transactions, may be readily ascertained, traced, and recorded properly on applicable intercompany accounts.  Following completion of the final monthly true-up for each applicable month, the Debtor shall provide any statutory committee appointed in this chapter 11 case and the U.S. Trustee with a summary of the final monthly true-up performed in connection with the applicable month-end close and the resulting intercompany balances.  Upon the reasonable request of any statutory committee appointed in this chapter 11 case or the U.S. Trustee, the Debtor shall provide additional detail regarding any Intercompany Transaction.

6.      The Debtor is authorized to accrue intercompany balances to the extent such balances have not yet been settled through the weekly cash-remittance process or final monthly true-up as set forth in the Motion during the pendency of this chapter 11 case.  Each payment (or other transfer of cash, whether to or from the Debtor) under any Intercompany Transaction is hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code.

7. The Amended Keepwell Agreement, attached as Exhibit 1 to this Interim Order, and all terms, conditions, transactions, and agreements contemplated thereby or embodied therein, are hereby approved, on a final basis, in all respects pursuant to section 363(b) of the Bankruptcy Code and represent a valid exercise of the Debtor's business judgment. The Debtor is authorized, but not directed, to perform under the Amended Keepwell Agreement, including by making capital calls, receiving funding thereunder, and using funds subject to and in accordance with the Budget, and to take any additional actions reasonably necessary or appropriate to implement and effectuate the Amended Keepwell Agreement; *provided* that Emprise HPC shall not receive or be entitled to assert any administrative expense or other postpetition claim against the Debtor on account of amounts funded pursuant to any capital call under the Amended Keepwell Agreement.

8. The Carve-Out Amounts shall be held and disbursed solely to Retained Professionals in accordance with the Interim Order, the Final Order, and any interim compensation order or fee order entered in the Chapter 11 Case, as well as on account of U.S. Trustee Statutory Fees. The Carve-Out Amounts shall not be available for distribution on account of any other claim or equity interest (including administrative claims), and no liens, claims, encumbrances, or other interests shall attach to the Carve-Out Accounts or the Carve-Out Amounts.

9. The Debtor shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of (or on behalf of) the Debtor.

10. The Debtor is authorized, but not directed, to continue using, in their existing forms, the Business Forms, as well as checks and other documents relating to the Bank Accounts existing immediately before the Petition Date, and to maintain and continue using, in their existing forms, the Books & Records; *provided* that once the Debtor has exhausted its existing stock of Business Forms, the Debtor shall ensure that any new Business Forms are clearly labeled with the "Debtor

in Possession" designation and the chapter 11 case number as soon as reasonably practicable to do so. To the extent the Debtor prints any new checks or uses any electronic Business Forms, it shall include the "Debtor in Possession" designation and the chapter 11 case number on all such checks as soon as reasonably practicable.

11. Each Cash Management Bank is authorized to continue to maintain, service, and administer the Bank Accounts held at such bank as accounts of the Debtor as debtor in possession without interruption and in the ordinary course of business consistent with past practice, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wire transfer requests, ACH transfers, electronic funds transfers, and other payment requests issued, drawn on, or directed to the Bank Accounts held at such bank after the Petition Date by the holders or makers thereof, as the case may be, and all such banks and financial institutions are authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved by this Interim Order; *provided* that the Debtor shall only instruct or request any Cash Management Bank to pay or honor any check, draft, or other payment item issued on a Bank Account prior to the Petition Date but presented to such Cash Management Bank for payment after the Petition Date as authorized by an order of the Court.

12. Each Cash Management Bank is authorized, without further order of this Court, to charge or deduct, and the Debtor is authorized, but not directed, to pay, honor, or satisfy any reasonable Bank Fees or charges associated with the Bank Accounts, including any prepetition amounts not to exceed $2,250, in the ordinary course and consistent with past practice.

13. Each Cash Management Bank is authorized, without further order of this Court, to charge back to the appropriate Bank Accounts maintained at such bank any amounts resulting from returned checks or other returned items, including returned items that result from ACH

6

transactions, wire transfers, merchant services, or other electronic transfers of any kind, regardless of whether such returned items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

14. The Debtor is authorized, but not directed, to open new bank accounts, close any existing Bank Account, and enter into any ancillary agreements related to the foregoing, as the Debtor may deem necessary and appropriate, subject to the terms and provisions of the Debtor's agreements with the Cash Management Banks, as applicable; *provided* that the Debtor gives notice within ten (10) days thereafter to the U.S. Trustee, counsel to the Non-Debtor Affiliates, and any statutory committee appointed in this chapter 11 case; *provided, further*, that the Debtor shall only open any such new bank accounts at banks that have executed a Uniform Depository Agreement with the U.S. Trustee or at banks that are willing to immediately execute such an agreement. The relief granted in this Interim Order is extended to any new bank account opened by the Debtor in the ordinary course of business after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened, which bank shall be deemed a Cash Management Bank, in each case, pursuant to this Interim Order.

15. The Debtor shall serve a copy of this Interim Order on each Cash Management Bank as soon as practicable after entry of this Interim Order, and upon any bank at which the Debtor opens a new bank account as soon as practicable upon the opening of the new account.

16. All banks maintaining any of the Bank Accounts that are provided with notice of this Interim Order shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date for which the Debtor specifically issues timely stop payment orders in accordance with the documents governing such Bank Accounts.

17. Subject to the terms of this Interim Order, each Cash Management Bank may rely

upon the representations of the Debtor with respect to whether any check, draft, wire transfer request, ACH transfer, electronic funds transfer, or other payment request drawn or issued by the Debtor before the Petition Date should be honored pursuant to any order of this Court, and no Cash Management Bank that honors a prepetition check or other payment item drawn on any Bank Account (a) at the direction of the Debtor, (b) in a good-faith belief that this Court has authorized such prepetition check or payment item to be honored, or (c) as a result of a mistake made despite implementation of reasonable customary handling procedures, shall be deemed liable to the Debtor, its estate, or any other party on account of such prepetition check or other payment item being honored postpetition or otherwise deemed to be in violation of this Interim Order.

18.     Any banks, including the Cash Management Banks, are further authorized to honor the Debtor's directions with respect to the opening and closing of any Bank Account and accept and hold, or invest, the Debtor's funds in accordance with the Debtor's instructions; *provided* that no Cash Management Bank shall have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law.

19.     As soon as practicable after entry of this Interim Order, the Debtor shall (a) contact each Cash Management Bank, (b) provide each Cash Management Bank with the Debtor's employer identification numbers, and (c) identify each Bank Account held at such bank as being held by a debtor in possession in the Debtor's chapter 11 case.

20.     To the extent that any of the Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code and any provisions of the U.S. Trustee Guidelines, the Debtor's time to comply with section 345(b) of the Bankruptcy Code is hereby extended for a period of thirty (30) days from the date of this Interim Order (the "Extension Period"), *provided*, *however*, that such extension is without prejudice to the Debtor's right to request a further

extension of the Extension Period or a final waiver of the requirements of section 345(b) in this chapter 11 case or the U.S. Trustee's right to oppose such a request.

21. Nothing contained herein shall permit any Cash Management Bank to terminate any cash management services without thirty (30) days' prior written notice (or such other period as may be specified in any agreement between the Debtor and the applicable Cash Management Bank) to the Debtor, the U.S. Trustee, counsel to the Non-Debtor Affiliates, and any official committee appointed in this chapter 11 case.

22. The Debtor is authorized to continue engaging in Intercompany Transactions in connection with the Cash Management System in the ordinary course of business; *provided* that there shall be no intercompany loans from the Debtor to any Non-Debtor Affiliates, absent further order of the Court; *provided, further* that prior to entry of the Final Order, aggregate cash disbursements from the Debtor to Non-Debtor Affiliates in connection with Intercompany Transactions shall not exceed $1,000,000.

23. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved by this Interim Order.

24. Nothing contained in the Motion or this Interim Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of the Debtor that did not exist as of the Petition Date or (b) alter or impair the validity, priority, enforceability, or perfection of any security interest, lien, or setoff or recoupment right, in favor of any person or entity, that

existed as of the Petition Date.

25. Notwithstanding anything to the contrary in this Interim Order, the authority of the Debtor to make any payments under this Interim Order is subject to the terms and conditions of the Amended Keepwell Agreement and the Budget (as defined thereunder).

26. Nothing in this Interim Order constitutes (a) an implication or admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor or any party in interest's rights to dispute the amount of, basis for, or validity of any claim or interest under applicable law or nonbankruptcy law; (c) a promise or requirement to pay any claim; (d) a waiver of the Debtor or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or granting of approval for assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate; or (g) a waiver or limitation of the Debtor's or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code, or any other applicable law. Any payment made pursuant to this Interim Order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtor or any party in interest's rights to subsequently dispute such claim.

27. The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

28. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

29. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

30.     The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

31.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation and enforcement of this Interim Order.

**Exhibit 1**

**Amended Keepwell Agreement**

## AMENDED AND RESTATED LIMITED CONTRIBUTION AGREEMENT

AMENDED AND RESTATED LIMITED CONTRIBUTION AGREEMENT (this "Agreement"), dated July 30, 2026 (the "Agreement Date"), and effective as of June 1, 2026 (the "Effective Date"), by EMPRISE HPC, LLC, a Delaware limited liability company (formerly known as Intermediary Holdco, LLC) (the "Parent"), and VI-JON, LLC, a Delaware limited liability company (the "Company").

## RECITALS

A.     The Parent and the Company have previously entered into that certain Limited Contribution Agreement, dated as of December 27, 2023 (the "Existing Agreement").

B.     The Parent and the Company desire to amend and restate the Existing Agreement in its entirety.

## AGREEMENT

NOW, THEREFORE, in consideration of the recitals and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parent and the Company hereby agree as follows:

1.     Defined Terms.  Capitalized terms used herein and not otherwise defined shall have the meanings set forth in this Section 1.

"Bankruptcy Code" means Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as now and hereafter in effect, or any successor statute.

"Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware or any other bankruptcy court of competent jurisdiction, with the consent of the Parent.

"Budget" means the Company's weekly cash flow budget showing projected cash receipts and cash disbursements on a weekly basis (with detail as to sources of cash receipts and identification of cash disbursements), in form and substance reasonably acceptable to the Parent.

"Business Days" means days on which banks in New York City, Dallas, or St. Louis are not authorized or required by law to close.

"Capital Call" means a written request signed by an authorized officer of the Company.

"Cash Management Motion" means a motion of the Company for entry of an order (i) authorizing (a) the Company to maintain its existing cash management system, bank accounts, and business forms and (b) pay certain obligations related thereto, (ii) authorizing postpetition intercompany transactions, (iii) approving the

619045716

Amended Keepwell Agreement, (iv) waiving requirements of section 345(b) of the Bankruptcy Code, and (v) granting related relief.

"Chapter 11 Case" means the voluntary Chapter 11 case under the Bankruptcy Code to be commenced by the Company in the Bankruptcy Court.

"Final Cash Management Order" means an order entered by the Bankruptcy Court granting the Cash Management Motion on a final basis, including, if not granted by the Interim Cash Management Order, approval of this Agreement on a final basis, in form and substance acceptable to the Parent.

"Interim Cash Management Order" means an order entered by the Bankruptcy Court granting the Cash Management Motion on an interim basis, including approval of this Agreement, in form and substance acceptable to the Parent.

2. Keepwell Obligation. For a period ending on December 27, 2033, the Parent will, within six (6) Business Days of its receipt of a Capital Call from the Company, make an equity investment in the Company in an amount set forth in the Capital Call to the bank account designated by the Company, provided that (a) the Parent's total investment (inclusive of $16,900,000 funded prior to the Agreement Date) will not exceed $25.0 million, and (b) the Parent shall not be required to fund the remaining $8,100,000 at any time after the Agreement Date, unless and until the Interim Cash Management Order is entered or, if no Interim Cash Management Order is entered, unless and until the Final Cash Management Order is entered.

3. Use of Proceeds. The Company shall use the proceeds of each Capital Call funded on and after the date hereof for anticipated or incurred expenses (including, without limitation, professional fees and other administrative expenses arising in the Chapter 11 Case) in accordance with the Budget. Notwithstanding the foregoing, the Company shall direct that $3,000,000 of Capital Call proceeds (the "Carve-Out Amount") be funded directly to one or more segregated escrow accounts for the benefit of retained professionals (each, a "Carve-Out Account"). The Carve-Out Amount shall not be deposited into or commingled with any account of the Company and shall be held and disbursed solely to retained professionals in accordance with the interim cash management order, final cash management order, and any interim compensation order or fee order.

4. No Waiver. No delay on the part of the Company in the exercise of any right or remedy may operate as a waiver or release or otherwise constitute a discharge of Parent's obligations under this Agreement, and no single or partial exercise by the Company of any right or remedy will preclude the further exercise to any extent. No modification or waiver of any provision of this Agreement will be binding upon the Company or Parent except as expressly set forth in a writing duly signed and delivered by the Company to Parent (in the case of waivers by the Company), Parent to the Company (in the case of waivers by Parent) or both parties (in the case of amendments). A party's failure at any time to require strict performance by the other party will not discharge any party's obligations under this Agreement, nor will it waive, affect or diminish

any right of a party at any time to demand strict performance and such right will not be deemed to have been waived by any act or knowledge of the Company.  No waiver by the other party of any default hereunder will operate as a waiver of either any other default or the same default on a future occasion, and no action or inaction by a party will in any way affect or impair the other party's rights or the other party's obligations hereunder.

5.    Not a Guaranty.    The parties acknowledge that Parent's obligations hereunder are not current liabilities of Parent and may mature into such a liability only on the terms and subject to the conditions hereof.  This Agreement is not, and nothing contained herein, and nothing done pursuant hereto by Parent will be deemed to constitute, a guaranty by Parent of the payment or collection of any obligation, indebtedness or liability of any kind or character whatsoever of the Company or any other person.

6.    Third-Party Beneficiaries.  Nothing in this Agreement, either express or implied, is intended to confer any rights, benefits or obligations hereunder upon any person or entity other than the parties hereto.

7.    Amendment.  No provision of this Agreement may be amended, supplemented or modified, nor may any of the terms and conditions hereof be waived, except by a written instrument executed by the parties.

8.    Counterparts; Electronic Signatures.  This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts will together constitute one and the same agreement, and all signatures need not appear on any one counterpart. Copies of all such counterparts may be delivered by the parties by facsimile or other electronic transmission, which copies will be valid and binding for all purposes. A signed copy of this Agreement delivered by facsimile, e-mail, DocuSign or other means of electronic transmission will be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

9.    Notices.  All notices, consents and other communications given under this Agreement must be in writing and will be deemed to have been duly given upon receipt, when delivered by hand or a recognized overnight courier, or when successfully transmitted by email, to the party to which intended, at the address or facsimile number for such party set forth on the signature page of this Agreement, or to such other address or facsimile number as may be furnished by such party by notice in the manner provided herein.

10.    Governing Law; Choice of Forum.  This Agreement has been made under and any dispute will be governed by and construed in accordance with the laws of the State of Delaware applicable to contracts made and performed in such State without giving effect to any of the conflicts of law principles of such State that would require or permit the application of the laws of another jurisdiction.  Any action, suit or proceeding hereunder may be brought and maintained only in the Court of Chancery of the State of

Delaware in Wilmington, Delaware or, after commencement of the Chapter 11 Case, in the Bankruptcy Court.

11.    <u>Effect of Amendment and Restatement</u>.  The parties hereto agree that this Agreement amends, supersedes, renews, extends and restates the Existing Agreement in its entirety without substitution or novation.  Nothing herein contained shall be construed as a substitution or novation of the obligations outstanding under the Existing Agreement.  The parties hereto agree that all of the rights, duties, liabilities and obligations of each party under the Existing Agreement are hereby renewed, amended, modified and extended as provided herein, and shall not act as a novation thereof.

12.    <u>Ratification of Prior Funding</u>.  The parties hereby ratify and confirm all Capital Calls and other funding requests made, all amounts funded, and all uses thereof, in each case in connection with the Existing Agreement on or prior to the Agreement Date (collectively, the "<u>Prior Funding</u>"). The Prior Funding shall be deemed to comply with the Existing Agreement and shall not constitute or give rise to any breach, default or event of default thereunder or hereunder. The Parent waives any claim, defense or right to repayment arising from any alleged noncompliance with respect thereto, and all amounts so funded shall count toward the cap in <u>Section 2</u>.

[*Signatures follow on next page.*]

4

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the Effective Date.

EMPRISE HPC, LLC

By: _____
Name: Gregory Billhartz
Title: President

ACCEPTED AND AGREED:

VI-JON, LLC

By: _____
Name: Mackenzie Shea
Title: Chief Restructuring Officer

Address for Notices:

8800 Page Avenue
St. Louis, MO 63144
Attention: Greg Billhartz, President
Email: gbillhartz@emprisegroup.com

Address for Notices:

Mackenzie Shea
c/o BRG
225 Franklin Street
Suite 3100
Boston, MA 02110
Attention: Mackenzie Shea, Chief
Restructuring Officer
Email: MShea@thinkbrg.com

With a copy (which shall not constitute
    notice) to:

Sidley Austin LLP
787 Seventh Ave
New York, NY 10019
Attention: Thomas R. Califano, William E.
    Curtin, & Anne G. Wallice
Email: tom.califano@sidley.com
    wcurtin@sidley.com
    anne.wallice@sidley.com