**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>VI-JON, LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11216 (MFW) |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE DISCLOSURE STATEMENT ON AN INTERIM BASIS; (II) APPROVING SOLICITATION PROCEDURES AND FORM AND MANNER OF NOTICE OF COMBINED HEARING AND OBJECTION DEADLINE; (III) SCHEDULING COMBINED HEARING ON THE ADEQUACY OF THE DISCLOSURE STATEMENT AND THE CONFIRMATION OF THE DEBTOR'S CHAPTER 11 PLAN; (IV) FIXING DEADLINE TO OBJECT TO DISCLOSURE STATEMENT AND PLAN; (V) APPROVING NOTICE AND OBJECTION PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (VI) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor in possession (the "Debtor") respectfully states the following in support of this motion (the "Motion"):

## RELIEF REQUESTED

1. The Debtor filed this chapter 11 case (this "Chapter 11 Case") to comprehensively resolve all current and future Talc Personal Injury Claims (as defined in the Plan) asserted against the Debtor and its non-Debtor affiliates (the "Non-Debtor Affiliates") and to effectuate a global settlement among the Debtor, the Non-Debtor Affiliates, counsel representing over 80% of claimants currently asserting Talc Personal Injury Claims against the Debtor (the "Ad Hoc Plaintiffs' Group"), and the prepetition future claimants' representative ("Prepetition FCR").[2]

[1] The Debtor in this chapter 11 case is Vi-Jon, LLC. The last four digits of the Debtor's federal tax identification number are 8002. The Debtor's service address is 8800 Page Ave., St. Louis, MO 63114.

[2] Since the Petition Date, the Ad Hoc Plaintiffs' Group and the Prepetition FCR have been officially appointed as the estate fiduciaries for their respective constituencies. On August 17, 2026, the United States Trustee for the District of

2. The settlement is reflected in the *Chapter 11 Plan of Reorganization of Vi-Jon, LLC* filed contemporaneously herewith [Docket No. 141] (as amended, modified, or supplemented in accordance with the terms thereof, the "Plan") and described in the *Disclosure Statement for the Chapter 11 Plan of Reorganization of Vi-Jon, LLC* filed contemporaneously herewith [Docket No. 142] (as amended, modified, or supplemented, the "Disclosure Statement").[3] The Plan contemplates the establishment of a § 524(g) trust—funded by a guaranteed $25 million contribution by the Debtor's non-debtor affiliate Emprise Group, Inc., and additional consideration (including rights under insurance policies) and the channeling of all current and future Talc Personal Injury Claims to the § 524(g) trust—which will be governed by the trust distribution procedures filed with the Plan (the "Trust Distribution Procedures").

3. The Debtor has secured non-recourse, equity funding for this Chapter 11 Case from its non-debtor affiliate Emprise HPC, LLC ("Emprise HPC") under the Amended Keepwell Agreement. However, the equity funding is not limitless—it is subject to the Budget (as defined in the Restructuring Term Sheet), and the Restructuring Support Agreement sets forth milestones that require the Debtor to confirm the Plan by November 20, 2026. By this Motion, the Debtor seeks court approval to commence solicitation on the Plan and establish deadlines and procedures for an efficient confirmation process, which complies with all notice periods set forth in the Bankruptcy Code and Local Rules (each as defined below).

---

Delaware (the "U.S. Trustee") appointed the official Committee of Unsecured Creditors (the "Unsecured Creditors' Committee"). *See* Docket No. 81. Six of the seven members of the Unsecured Creditors' Committee are clients of members of the Ad Hoc Plaintiffs' Group. On August 11, 2026, the Debtor filed a motion [Docket No. 71] to appoint the Prepetition FCR as the official future claimants' representative (the "Future Claimants' Representative") in this case. On August 28, 2026, the Court entered the *Order (I) Appointing the Hon. Shelley C. Chapman (Ret.) as Future Claimants' Representative Effective as of the Petition Date and (II) Granting Related Relief* [Docket No. 107].

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or Disclosure Statement, as applicable.

4. Accordingly, the Debtor seeks entry of an order (the "Solicitation Procedures Order"), substantially in the form attached hereto as **Exhibit A**, granting, among other things, the following relief:

a. approving the Disclosure Statement on an interim basis for solicitation purposes;

b. approving (i) the Debtor's Solicitation Procedures (as defined herein) with respect to the Plan, including the forms of ballots and (ii) the form and manner of the notice of Combined Hearing and Objection Deadline (as defined below);

c. scheduling a combined hearing (the "Combined Hearing") on the adequacy of the Disclosure Statement and the confirmation of the Plan;

d. establishing certain deadlines in connection with the foregoing;

e. approving notice and objection procedures for the assumption and assignment of executory contracts and unexpired leases; and

f. granting related relief.

5. The following table summarizes the relevant dates and deadlines related to solicitation and the requested confirmation schedule (subject to the Court's calendar):

| **Event** | **Date/Deadline** |
|---|---|
| Plan and Disclosure Statement Filed | September 2, 2026 |
| Objection Deadline to Interim Disclosure Statement Approval / Solicitation Procedures | September 15, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Reply Deadline for Interim Disclosure Statement Approval / Solicitation Procedures | September 18, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Interim Disclosure Statement / Solicitation Procedures Approval Hearing | September 23, 2026 at 3:00 p.m. (prevailing Eastern Time) |
| Voting Record Date | September 23, 2026 |
| Solicitation Packages Served[4] | As soon as practicable following entry of the Solicitation Procedures Order, but no later than September 25, 2026 |

[4] With respect to holders of Claims in Voting Classes who (A) (i) are not listed in the Debtor's Schedules as holding liquidated, noncontingent, and undisputed Claims and (ii) file Proofs of Claim, or (B) as to which the Debtor files

| **Event** | **Date/Deadline** |
|---|---|
| General Bar Date<br><br>Supplemental Voting Record Date | September 29, 2026 at 11:59 p.m. (prevailing Eastern Time) |
| Deadline for Rule 3018 Motions | October 9, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Reply Deadline for Rule 3018 Motions | October 16, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Plan Supplement Filed | October 16, 2026 |
| Voting and Opt-in Deadline<br><br>Final Disclosure Statement and Confirmation Objection Deadline | October 23, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Final Disclosure Statement and Confirmation Reply Deadline<br><br>Deadline for Submission of Voting Certification | October 30, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Combined Hearing | November 4, 2026 at 10:30 a.m. (prevailing Eastern Time) |

6. Summarized below are the attachments and exhibits cited throughout this Motion:

| **Document** | **Exhibit** |
|---|---|
| Solicitation Procedures Order | Exhibit A |
| Solicitation Procedures | Exhibit 1 to the Solicitation Procedures Order |
| Combined Hearing Notice | Exhibit 2 to the Solicitation Procedures Order |
| Publication Notice | Exhibit 3 to the Solicitation Procedures Order |
| Notice of Non-Voting Status | Exhibit 4 to the Solicitation Procedures Order |

amended Schedules reflecting a liquidated, noncontingent, and undisputed Claim after the Voting Record Date, the Administrative Agent will distribute Solicitation Packages to such holders as soon as reasonably practicable following receipt of such Proof of Claim or filing of such amended Schedules.

| | |
|---|---|
| Contract/Lease Notice | Exhibit 5 to the Solicitation Procedures Order |
| Form of Class 3 Ballot | Exhibit 6-A to the Solicitation Procedures Order |
| Form of Class 4 Individual Ballot | Exhibit 6-B to the Solicitation Procedures Order |
| Form of Class 4 Master Ballot | Exhibit 6-C to the Solicitation Procedures Order |
| Disclosure Statement Hearing Notice | Exhibit B |

## JURISDICTION AND VENUE

7. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtor confirms its consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

8. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9. The statutory and legal bases for the relief requested in this Motion are sections 105(a), 365, 524(g), 1123, 1125, 1126, and 1128 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 3003, 3016, 3017, 3018, and 9008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1, 3017-1, 3017-2, and 9013-1.

## BACKGROUND

10. The Debtor is a provider of private-label dry bath products consisting of Epsom salts and body powders. The Debtor's products are sold across retail and e-commerce channels in the United States to major retailers such as Amazon, Dollar General, Kroger, TopCo, and Walgreens. The Debtor leverages shared-services and co-manufacturing agreements with its affiliates for sourcing, manufacturing, packaging, testing, quality control, and distribution of its products.

11. On August 2, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Court. The Debtor continues to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 17, 2026, the U.S. Trustee appointed the Unsecured Creditors Committee [Docket No. 81]. No trustee or examiner has been appointed in this case.

12. A detailed description of the Debtor's business, capital structure, and circumstances preceding the Petition Date may be found in the *Declaration of Mackenzie Shea in Support of the Debtor's Chapter 11 Petition and First Day Pleadings* [Docket No. 8] (the "First Day Declaration"). In further support of this Motion, the Debtor relies upon and incorporates by reference herein the First Day Declaration.

## THE PLAN AND DISCLOSURE STATEMENT

13. The proposed Plan, which memorializes the negotiated settlement set forth in the Restructuring Support Agreement and Restructuring Term Sheet, contemplates a § 524(g) trust structure designed to ensure fair and equitable treatment of present and future holders of Talc Personal Injury Claims while relieving the Debtor from the ongoing financial and operational burdens associated with defending and settling such claims through the tort system. The proposed restructuring under the Plan contemplates, among other things, (i) the establishment of the Talc

Personal Injury Trust, contributions to the Talc Personal Injury Trust by the Debtor and Non-Debtor Affiliates, and effectuation of Trust Distribution Procedures that will govern distributions on account of direct and indirect Talc Personal Injury Claims; (ii) broad releases in favor of the Debtor, Non-Debtor Affiliates, and Related Parties, and a channeling injunction under section 524(g) of the Bankruptcy Code; (iii) the transfer of a material set of the Debtor's assets to Emprise HPC or its designee; and (iv) other terms to effectuate the global settlement.

14. Under the Plan, Holders of Claims in Class 3 (General Unsecured Claims) and Class 4 (Talc Personal Injury Claims) are impaired and entitled to vote on the Plan (Class 3 and Class 4, together, the "Voting Classes"). The following chart summarizes the Classes of all Claims and Interests, their status, and their voting rights:

| **Class** | **Claims and Interests** | **Status** | **Voting Rights** |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 4 | Talc Personal Injury Claims | Impaired | Entitled to Vote |
| Class 5 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 6 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 7 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

15. Contemporaneously herewith, the Debtor has filed the Plan and corresponding Disclosure Statement. The Disclosure Statement outlines, among other things, the material terms of the proposed restructuring, the consequences of voting to accept or reject the Plan, and the

procedural framework for the remainder of this Chapter 11 Case. The Disclosure Statement furnishes adequate information to all holders of Claims in the Voting Classes, and the Debtor respectfully submits that the Disclosure Statement satisfies each of the requirements imposed by section 1125 of the Bankruptcy Code.

## BASIS FOR RELIEF REQUESTED

### I. APPROVAL OF THE DISCLOSURE STATEMENT AND FORM AND MANNER OF NOTICE OF HEARING THEREON

#### A. The Disclosure Statement Should Be Approved on an Interim Basis

16. Local Rule 3017-2 allows debtors to "file a motion requesting…(B) interim disclosure statement approval…" *See* Local Rule 3017-2(b)(i); *see also*, *e.g.*, *In re Lugano Diamonds & Jewelry Inc.,* Case No. 25-12055 (BLS) (Bankr. D. Del. July 14, 2026) [Docket No. 661] (approving the disclosure statement on an interim basis for solicitation purposes); *In re Salt House, Inc.*, Case No. 25-12277 (LSS) (Bankr. D. Del. Mar. 27, 2026) [Docket No. 301] (same); *In re AGDP Holding Inc.*, Case No. 25-11446 (MFW) (Bankr. D. Del. Nov. 4, 2025) [Docket No. 400] (same).

17. Pursuant to section 1125(b) of the Bankruptcy Code, a plan proponent must provide holders of impaired claims or equity interests with "adequate information" regarding such plan. Section 1125(a)(1) of the Bankruptcy Code provides, in relevant part, that:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan…

11 U.S.C. § 1125(a)(1).

18. Accordingly, a debtor's disclosure statement must, as a whole, provide information that is necessary to permit an informed judgment by impaired creditors entitled to vote on the plan. *See, e.g.*, *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote."); *In re Phx. Petroleum Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001) ("[T]he general purpose of the disclosure statement is to provide 'adequate information' to enable 'impaired' classes of creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan."); *In re SmarTalk Teleservices, Inc. Sec. Litig.*, 487 F. Supp. 2d 914, 923 (S.D. Ohio 2007) (noting that "the [d]isclosure [s]tatement serves the purpose of giving creditors information necessary to decide whether to accept the plan"). The bottom-line requirement of a disclosure statement is that it "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Keisler*, No. 08-34321, 2009 WL 1851413, at *4 (Bankr. E.D. Tenn. June 29, 2009) (quoting *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D. N.H. 1991)).

19. Whether a disclosure statement required under section 1125(b) of the Bankruptcy Code contains adequate information "is not governed by any otherwise applicable nonbankruptcy law, rule, or regulation." 11 U.S.C. § 1125(d). Rather, bankruptcy courts have broad discretion to determine the adequacy of the information contained in a disclosure statement. *See, e.g.*, *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (D. N.J. 2005) ("Section 1125 affords the Bankruptcy Court substantial discretion in considering the adequacy of a disclosure statement.") (citing *In re River Village Assocs.*, 181 B.R. 795, 804 (E.D. Pa. 1995)); *Phx. Petroleum Co.*, 278 B.R. at 393 (noting that the determination of what is adequate information is "largely within the discretion of the bankruptcy court") (quoting *Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.)*,

844 F.2d 1142, 1157 (5th Cir. 1988)); *In re Oxford Homes, Inc.*, 204 B.R. 264, 269 (Bankr. D. Me. 1997) (noting that "[t]he precise contours of 'adequate information' were vaguely drawn by Congress so that bankruptcy courts might exercise their discretion to limn them in view of each case's peculiar circumstances"); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) (noting that the adequacy of a disclosure statement "is to be determined on a case-specific basis under a flexible standard that can promote the policy of Chapter 11 towards fair settlement through a negotiation process between informed interested parties"). Accordingly, the determination of whether a disclosure statement contains adequate information should be made on a case-by-case basis, focusing on the unique facts and circumstances of each case. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case.").

20. Here, the Disclosure Statement contains the information necessary for holders of Talc Personal Injury Claims and General Unsecured Claims against the Debtor to make an informed decision about whether to vote to accept or reject the Plan, including, among other things:

a. an overview of the Plan (Art. I);

b. a description of the solicitation and voting procedures (Art. I.E and Art. I.F);

c. information regarding the Debtor's history and business operations and the key events leading to the commencement of this Chapter 11 Case (Art. II);

d. a summary of the Debtor's liabilities and insurance coverage (Art. II.B);

e. information regarding the Debtor's talc-related litigation, settlements, and verdicts (Art. II.C);

f. a description of the negotiations between the Debtor, the Non-Debtor Affiliates, the Ad Hoc Plaintiffs' Group, and the Prepetition FCR that led to the execution of the Restructuring Support Agreement and the proposed sale of the Debtor's real estate (Art. III);

g. a description of the significant events of this Chapter 11 Case (Art. IV);

h. a description of the various Classes of Claims and Equity Interests, as well as a description of each of the Voting Classes (Art. V);

i. an overview of the Talc Personal Injury Trust and the Talc Personal Injury Trust Distribution Procedures (Art. VI);

j. an overview of the Plan's treatment of Executory Contracts and Unexpired Leases (Art. VII.H);

k. a description of the release, injunction, and exculpation provisions contained in the Plan (Art. VII.I);[5]

l. requirements for confirmation of the Plan and conditions precedent to consummation of the Plan (Art. VIII);

m. risk factors affecting the Debtor and the Plan (Art. IX);

n. an analysis of the alternatives to confirmation and consummation of the Plan (Art. X); and

o. information regarding the tax consequences of the Plan (Art. XI).

21. Based on the foregoing, the Debtor submits that the Disclosure Statement contains sufficient information for the holders of Talc Personal Injury Claims and General Unsecured Claims to make an informed judgment regarding whether to vote to accept or reject the Plan. At

[5] Pursuant to Bankruptcy Rule 3016(c), this description is set forth in specific and conspicuous language.

the Combined Hearing, the Debtor will demonstrate on a final basis that the information set forth in the Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code. To ensure that the Plan is confirmed in a timely manner in compliance with the milestones under the Restructuring Support Agreement, and to thereby preserve value for the benefit of all stakeholders, the Debtor has determined in its business judgment that it is necessary and prudent to proceed on the timeline proposed herein—which complies with all notice periods set forth in the Bankruptcy Code and Local Rules. Accordingly, the Debtor respectfully requests that the Court enter the proposed Solicitation Procedures Order, attached as **Exhibit A** hereto, approving, among other things, the Disclosure Statement on an interim basis for solicitation purposes only.

### B. Notice of the Interim Hearing on the Adequacy of the Disclosure Statement for Solicitation Purposes was Adequate and Proper

22. Local Rule 3017-2(b)(ii) provides as follows:

> The motion [for interim approval of the disclosure statement] must be filed at least 21 days before the hearing and be served on the parties listed in Local Rule 2002-1(b), and, if the debtor issued publicly traded securities, the SEC. The claims agent must also post the notice on the case website. If no objection is filed within 14 days after the motion is served, then the Court may grant the motion without a hearing.

Del. Bankr. L.R. 3017-2(b)(ii). Additionally, Local Rule 3017-2(b)(iv) provides that notice of the deadline to object to the final approval of the Disclosure Statement and confirmation of the proposed Plan (the "Objection Deadline") must comply with Bankruptcy Rule 2002(b) and that the proposed date for the Combined Hearing must be at least 7 days after the Objection Deadline, unless the Court orders otherwise. Bankruptcy Rule 2002(b) provides that at least 28 days' notice by mail must be given to all creditors and indenture trustees of the time set for filing objections to, and the hearing to consider approval of, a disclosure statement.

23. Contemporaneously with the filing of this Motion, the Debtor provided copies of a notice (the "Disclosure Statement Hearing Notice"), attached hereto as **Exhibit B**, by electronic and/or first class mail, to the following parties: (a) all Persons or Entities that have filed Proofs of Claim in this Chapter 11 Case that have not been previously withdrawn or disallowed by a final order; (b) all Persons or Entities listed in the Schedules as holding liquidated, noncontingent, and undisputed Claims; (c) all known attorneys representing any holders of Talc Personal Injury Claims;[6] (d) any other known holders of Claims against, or Equity Interests in, the Debtor; (e) the U.S. Trustee; (f) counsel to the Non-Debtor Affiliates; (g) counsel to the Future Claimants' Representative; (h) counsel to the Unsecured Creditors Committee; and (i) all parties entitled to notice pursuant to Local Rule 2002-1(b). Among other things, the Disclosure Statement Hearing Notice identifies the date, time, and place of the hearing on interim approval of the Disclosure Statement (the "Disclosure Statement Hearing") and the deadline and procedures for asserting objections to the interim approval of the Disclosure Statement. A copy of the Disclosure Statement Hearing Notice will also be posted on the case website maintained by Omni Agent Solutions, Inc. as the Debtor's administrative agent[7] ("Omni" or the "Administrative Agent") at https://omniagentsolutions.com/Vi-Jon-Ballots.

---

[6] Pursuant to the *Final Order (I) Authorizing the Debtor to (A) Redact Certain Personally Identifiable Information From the Creditor Matrix and Other Documents, (B) List Addresses of Represented Litigation Claimants' Counsel in the Creditor Matrix and Other Filings in Lieu of Represented Litigation Claimants' Addresses and Serve Represented Litigation Claimants at Such Addresses and (C) List the Twenty Law Fims Representing the Largest Number of Represented Litigation Claimants Instead of the Twenty Largest Unsecured Creditors, (II) Approving Notice of Commencement Procedures, and (III) Granting Related Relief* [Docket No. 103], the Debtor is providing notice to the attorneys representing Holders of Talc Personal Injury Claims. Holders of Talc Personal Injury Claims who are unrepresented will receive notice directly.

[7] *See* the *Debtor's Application for Entry of an Order Authorizing the Retention and Employment of Omni Agent Solutions, Inc. as Administrative Agent to the Debtor and Debtor in Possession, Effective as of the Petition Date*, filed by the Debtor at Docket No. 116.

24. Along with the Disclosure Statement Hearing Notice, the Debtor also served a copy of the Disclosure Statement and the Plan on (a) the U.S. Trustee; (b) the United States Attorney's Office for the District of Delaware; (c) the attorneys general of the states in which the Debtor does business; (d) the Internal Revenue Service; (e) the firms listed on the Debtor's list of the top twenty (20) law firms with the most significant representations of Represented Litigation Claimants; (f) counsel to the Non-Debtor Affiliates; (g) counsel to the Future Claimants' Representative; (h) counsel to the Unsecured Creditors Committee; and (i) all parties entitled to notice pursuant to Local Rule 2002-1(b). The Debtor will provide copies of the Disclosure Statement and Plan to all other parties that request such documents in the manner specified in the Disclosure Statement Hearing Notice and Bankruptcy Rule 3017(a). Copies of these documents are also on file with the Clerk of the Court for review during normal business hours (a fee may be charged) and are available free-of-charge on the website maintained by Omni at https://omniagentsolutions.com/Vi-Jon.

25. The Debtor submits that the foregoing procedures provide adequate notice of the Disclosure Statement Hearing and, accordingly, request that the Court approve such notice as appropriate and in compliance with the relevant requirements of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

## II. APPROVAL OF THE SOLICITATION PROCEDURES[8]

26. The Debtor respectfully requests that the Court approve the solicitation procedures attached as **Exhibit 1** to the Solicitation Procedures Order (the "Solicitation Procedures") and authorize the solicitation and tabulation of votes on the Plan from the holders of Talc Personal

[8] The description of the Solicitation Procedures set forth herein is intended only as a summary. Nothing in this summary description modifies the Solicitation Procedures, and reference should only be made to the Solicitation Procedures themselves for the precise terms thereof, which terms control in the event of any inconsistency between the summary included herein and the Solicitation Procedures.

Injury Claims and General Unsecured Claims entitled to vote on the Plan in accordance with such Solicitation Procedures. While the Debtor is seeking approval of the Solicitation Procedures in their entirety pursuant to this Motion, provided below is an overview of certain salient features of the Solicitation Procedures, including: (a) the proposed contents of the Solicitation Packages (as defined below), (b) the proposed distribution of the Solicitation Packages to counsel for holders of Talc Personal Injury Claims and voting by such counsel on behalf of such claimants, (c) the proposed Voting Deadline (as defined below), and (d) the Debtor's proposal to allow, solely for voting purposes, each Direct Talc Personal Injury Claim in the applicable value assigned to the disease giving rise to the Direct Talc Personal Injury Claim in the Trust Distribution Procedures, and each Indirect Talc Personal Injury Claim in the amount of $1.00 in the aggregate per claimant.

**A. The Proposed Solicitation Packages are Appropriate and Should be Approved**

27. Section 1126 of the Bankruptcy Code and Bankruptcy Rule 3017(d) require a plan proponent to mail copies of the plan, the disclosure statement, and a notice regarding the deadlines for voting on the plan to all creditors and equity security holders of the Debtor. Consistent with such requirements, the Debtor, acting through its Administrative Agent, proposes to solicit acceptances of the Plan by disseminating the materials set forth below (collectively, the "Solicitation Package") as soon as practicable following entry of the Solicitation Procedures Order, and no later than **September 25, 2026** (the "Solicitation Date").

28. The Solicitation Package will consist of:

a. the Combined Hearing Notice (as defined below);

b. a QR code linking to (i) a copy of the Disclosure Statement with all exhibits, including the Plan with its exhibits (to the extent such exhibits are filed with the Court before the Solicitation Date), and (ii) the Solicitation Procedures Order;

c. solely with respect to Solicitation Packages provided to law firms representing holders of Claims in Class 4 (Talc Personal Injury Claims), a Master Ballot and voting instructions;

d. with respect to Solicitation Packages provided to Holders of Claims in Class 3 (General Unsecured Claims), Holders of Claims in Class 4 (Talc Personal Injury Claims) who do not have an attorney of record, Holders of Claims in Class 4 (Talc Personal Injury Claims) who request an individual Ballot, or Holders of Claims in Class 4 (Talc Personal Injury Claims) whose attorney of record has requested an individual Ballot on such Holder's behalf, an appropriate Ballot and voting instructions;

e. a pre-addressed return envelope for completed Ballots;

f. a letter from the Unsecured Creditors Committee and the Future Claimants' Representative urging such claimants to vote to accept the Plan (a copy of which will be filed before the Interim Hearing); and

g. any other materials ordered by the Court to be included as part of the Solicitation Package.

29. The Debtor will distribute Solicitation Packages to the U.S. Trustee and any known holders of Claims against the Debtor in a Voting Class as of the Voting Record Date, subject to the procedures described below for holders of Talc Personal Injury Claims that are represented by counsel and the procedures described below for supplemental solicitation (collectively, the "Solicitation Parties").

30. As described below, Class 1 (Other Secured Claims) and Class 2 (Other Priority Claims) are presumed to accept the Plan. Class 6 (Section 510(b) Claims) is subordinated pursuant

to the Plan and section 510 of the Bankruptcy Code and shall not receive or retain any property under the Plan. In an effort to conserve the resources of the Debtor's estate, the Debtor proposes to send to Holders of Claims in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), and Class 6 (Section 510(b) Claims) a Combined Hearing Notice and Notice of Non-Voting Status, which sets forth the manner in which a copy of the Plan and Disclosure Statement may be obtained.

31. With respect to Class 5 (Intercompany Claims) and Class 7 (Existing Equity Interests), the Debtor requests a waiver of any requirement to serve copies of the Plan, Disclosure Statement, Combined Hearing Notice, and Notice of Non-Voting Status because such Claims and Interests are held by the Debtor and/or its affiliates.

32. Due to the voluminous nature of certain documents, the Debtor proposes to distribute in electronic format the Disclosure Statement, the Plan, and the Solicitation Procedures Order to Holders of Claims entitled to vote on the Plan by providing instructions as part of the Solicitation Package for accessing these documents, free of charge, through the Debtor's restructuring website (https://omniagentsolutions.com/Vi-Jon-Ballots) or QR code. Given the length of the Disclosure Statement, the Plan, and Solicitation Procedures Order, distribution in this manner will allow the Solicitation Packages to be sent on the earliest possible date. The Debtor submits that such materials and manner of service satisfy the requirements of Bankruptcy Rule 3017(d). Electronic distribution of solicitation materials is common in large chapter 11 cases in general and mass tort cases in particular. *See, e.g.*, *In re Valves and Controls US, Inc.*, No. 25-11403 (TMH) (Bankr. D. Del. Apr. 15, 2026) [Docket No. 398] (permitting disclosure statement and plan to be transmitted through electronic means, including via USB flash drive); *In re AIO US, Inc.,* No. 24-11836 (CTG) (Bankr. D. Del. May 20, 2025) [Docket No. 1047] (permitting disclosure statement to be transmitted via USB flash drive); *In re FTX Trading Ltd.*, No. 22-11068

(KBO) (Bankr. D. Del. June 26, 2024) [Docket No. 19068] (permitting transmission of the solicitation package in electronic format, including via e-mail and USB flash drive); *In re Proterra Inc.*, No. 23-11120 (BLS) (Bankr. D. Del. Jan. 25, 2024) [Docket No. 951] (permitting transmission of the plan and disclosure statement via flash drive); *In re Imerys Talc America Inc.*, No. 19-10289 (LSS) (Bankr. D. Del. Jan. 27, 2021) [Docket No. 2863] (permitting disclosure statement to be transmitted via USB flash drive). Moreover, should a party prefer to receive the Disclosure Statement and Plan in paper form, such party may request a hard copy of these documents, without charge, from the Administrative Agent. The Disclosure Statement, Plan, and related exhibits will also be available free of charge on the Administrative Agent's website at https://omniagentsolutions.com/Vi-Jon.

33. The Debtor seeks approval of its reliance on address information maintained by the Debtor and provided to the Administrative Agent as of the Voting Record Date in transmitting the Combined Hearing Notice. The Debtor also seeks a waiver of any obligation to conduct additional research for updated addresses based on undeliverable materials and requests that neither the Debtor nor the Administrative Agent be required to resend the Combined Hearing Notice or other materials that are returned as undeliverable, unless accurate addresses for such parties are provided.

**B. Voting Record Date**

34. Bankruptcy Rule 3017(d) provides, in relevant part, that, for the purpose of soliciting votes in connection with the confirmation of a chapter 11 plan, "creditors and equity security holders shall include holders of stock, bonds, debentures, notes and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d). Bankruptcy Rule 3018(a) provides, in relevant part, that: "A plan may be accepted or rejected in accordance with

§ 1126 of the Code within the time fixed by the Court pursuant to Rule 3017." Fed. R. Bankr. P. 3018(a).

35. In accordance with these Rules, the Debtor requests that the Court set **September 23, 2026**, as the date for determining which claimants are entitled to vote on the proposed Plan (the "Voting Record Date"). With respect to transfers of Claims filed pursuant to Bankruptcy Rule 3001(e), the transferee shall be entitled to receive a Solicitation Package (as defined below) and, if the holder of such Claim is entitled to vote with respect to the proposed Plan, cast a Ballot on account of such Claim only if: (a) all actions necessary to transfer such Claim are completed by the Voting Record Date; or (b) the transferee files by the Voting Record Date (i) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer. In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote on the proposed Plan made by the holder of such Claim as of the Voting Record Date.

36. In addition, the Debtor requests the Court establish the Voting Record Date as the date for determining which holders of Claims and/or Interests in Non-Voting Classes are entitled to receive a Notice of Non-Voting Status. The Debtor believes the Voting Record Date is appropriate, as it facilitates the determination of which claimants are entitled to vote on the proposed Plan or, in the case of Claim and Interest holders in Non-Voting Classes, to receive the applicable Notices of Non-Voting Status.

## C. The Solicitation Procedures and Voting Instructions are Appropriate and Should be Approved

37. The Ballots (including the Master Ballots) will be accompanied by detailed voting instructions, including procedures for submitting such Ballots and Master Ballots by electronic

means or by mail. Holders of Claims in each of the Voting Classes will be instructed to follow the specific instructions provided with each Ballot or Master Ballot.

38. Prior to the Voting Record Date, the Debtor will contact all known attorneys representing holders of Talc Personal Injury Claims, as listed on the Schedules (collectively, the "Firms") to ask such Firms to elect whether, with respect to each holder of a Talc Personal Injury Claim represented by a Firm (the "Clients"), such Client will be voting individually or through the Master Ballot provided to the Firm. If, with respect to any Client, a Firm (a) is unable to certify that it has the authority to aggregate and/or vote such Client's Class 4 Talc Personal Injury Claim or (b) has authority to aggregate and/or vote such Client's Class 4 Talc Personal Injury Claim but does not intend to exercise such authority, the Firm must, before the Voting Record Date, email the Administrative Agent at Vi-JonInquiries@OmniAgnt.com with an Excel file setting forth specific data for each Client[9] and indicating their choice to either (a) have the Administrative Agent transmit the Solicitation Packages to such Firm's Clients or (b) transmit the Solicitation Packages to its Clients directly. Should a Firm choose option (b), the Debtor will reimburse such firm for the actual postage incurred upon submission of reasonable evidence of postage expenses incurred. If a Firm does not certify that it has the authority to aggregate and/or vote its Clients' Claims prior to the Voting Record Date, the Debtor will provide individual Ballots to the Clients of such Firm, with a copy (or aggregated copy listing all such Clients) to the Firm.

39. The Debtor shall cause the Administrative Agent to distribute copies of the Master Ballot by first-class mail (with a copy by email if email addresses are available) to all Firms who have elected to submit a Master Ballot on behalf of their Clients and who have certified their

---

[9] A copy of the template Excel file can be obtained from the Administrative Agent.

authority to submit a Master Ballot prior to the Voting Record Date.[10] As set forth in the Solicitation Procedures, with respect to each Client, such Firm shall, on behalf of each Client for whom it is authorized to vote on behalf of to accept or reject the Plan, complete, sign, and return the Master Ballot to the Administrative Agent by the Voting Deadline in accordance with the instructions included in the Solicitation Packages.

40. Providing Solicitation Packages to attorneys for holders of Talc Personal Injury Claims reflects the reality of how most talc-related claims are asserted. Sometimes, an attorney has authority under applicable bankruptcy or non-bankruptcy law to make numerous decisions for his or her Client in respect of such claim, such as whether and how to vote on a chapter 11 plan. Providing Solicitation Packages directly to such counsel is consistent with this practice, and avoids the issue of providing Solicitation Packages to the claimants themselves, which is likely to increase confusion on the part of such claimants and their counsel and increase the costs of solicitation. It is precisely to mirror the customary flow of information in these matters and minimize similar potential confusion and costs that the Debtor previously sought authority to provide notices to holders of Talc Personal Injury Claims in this Chapter 11 Case through their counsel, which the Court has granted.[11] All counsel that seek to vote on behalf of their Clients will be required to certify on the Master Ballot that they have the requisite authority under applicable law to vote on the Plan on behalf of such holders. *See* Solicitation Procedures § III(I)(b)(5). If the attorney is

---

[10] Inclusion on a Client List (as defined below) or submission of a Ballot by or on behalf of a Client (as defined below) or asserted holder of a Talc Personal Injury Claim is not and does not equate to submission of a claim pursuant to the Talc Personal Injury Trust Documents to be resolved by the Talc Personal Injury Trust as contemplated by the Plan.

[11] *See Final Order (I) Authorizing the Debtor to (A) Redact Certain Personally Identifiable Information from the Creditor Matrix and Other Documents, (B) List Addresses of Represented Litigation Claimants' Counsel in the Creditor Matrix and Other Filings in Lieu of Represented Litigation Claimants' Addresses and Serve Represented Litigation Claimants at Such Addresses and (C) List the Twenty Law Firms Representing the Largest Number of Represented Litigation Claimants Instead of the Twenty Largest Unsecured Creditors, (II) Approving Notice of Commencement Procedures, and (III) Granting Related Relief* [Docket No. 103].

unable to so certify, that attorney must promptly advise the Administrative Agent, so that the Clients' votes on the Plan may be solicited directly. Allowing counsel to vote on the Plan on behalf of their clients—subject to certification that they otherwise have the right to do so—accurately reflects the way in which the applicable Talc Personal Injury Claim is asserted against the Debtor by counsel on behalf of the individual claimant, and should be approved under the circumstances.

41. The noticing of holders of Talc Personal Injury Claims through their counsel and voting on a plan of reorganization through such counsel are both conventional practices in mass tort chapter 11 cases. *See, e.g.*, *In re Valves and Controls US, Inc.*, No. 25-11403 (TMH) (Bankr. D. Del. Apr. 15, 2026) [Docket No. 398] (permitting solicitation of asbestos claimants through a single solicitation package with a master ballot sent to the counsel to such claimants); *In re Mosaic Companies, LLC*, No. 25-11296 (CTG) (Bankr. D. Del. Oct. 8, 2025) [Docket No. 360] (same); *In re AIO US, Inc.,* No. 24-11836 (CTG) (Bankr. D. Del. May 20, 2025) [Docket No. 1047] (same); *In re Imerys Talc America, Inc.*, Case No. 19-10289 (LSS) (Bankr. D. Del. Jan. 27, 2021) [Docket No. 2863] (same); *In re Paddock Enterprises, LLC.*, No. 20-10028 (LSS) (Bankr. D. Del. Feb. 17, 2022) [Docket No. 1216] (same). Such procedures for noticing and voting have proven in those cases and others to be efficient and effective and should be approved here as well.

### D. Talc Personal Injury Claims Should be Temporarily Allowed Solely for Voting Purposes

42. The Debtor proposes to temporarily allow all Direct Talc Personal Injury Claims for the limited purpose of voting on the Plan in the applicable value assigned to the disease giving rise to the Direct Talc Personal Injury Claim, regardless of whether such claims are liquidated or unliquidated. This value of such claims will not be binding on the Debtor, the Talc Personal Injury

Trust, the holders of any Talc Personal Injury Claim, or any other party for purposes of allowance, distribution, or any other purpose other than voting to accept or reject the Plan.

43. Indirect Talc Personal Injury Claims are a subset of Talc Personal Injury Claims in Class 4. Because the nature and amount of the Indirect Talc Personal Injury Claims are unknown, the proposed Solicitation Procedures and Solicitation Procedures Order would similarly temporarily allow any Indirect Talc Personal Injury Claims (whether liquidated or unliquidated) for voting purposes in the amount of $1.00 in the aggregate per claimant.

44. Generally, only holders of claims allowed under section 502 of the Bankruptcy Code are entitled to vote to accept or reject a plan of reorganization. *See* 11 U.S.C. § 1126(a) ("The holder of a claim or interest allowed under section 502 of this title may accept or reject a plan."). Claims that are (a) listed on the Schedules as contingent, unliquidated, or disputed, (b) specified in Proofs of Claim in an unliquidated or zero dollar amount or as contingent or disputed, or (c) the subject of pending objections are not allowed claims under section 502(a) of the Bankruptcy Code. However, Bankruptcy Rule 3018(a) provides that the "court after notice and hearing may temporarily allow [any] claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan."

45. The vast majority of the Talc Personal Injury Claims are contingent, unliquidated, and disputed. The proposed temporary allowance of Talc Personal Injury Claims for voting purposes addresses this issue in a way that adequately considers the particular circumstances of this Chapter 11 Case, reflects an appropriate scheme for voting on the Plan, is supported by the Unsecured Creditors Committee and the Future Claimants' Representative, and is consistent with similar chapter 11 cases. Further, even Direct Talc Personal Injury Claims that are liquidated

should be counted one vote and valued in the amounts set forth in the Trust Distribution Procedures and disclosed on the applicable Master Ballot or Ballot.

46. Moreover, the temporary allowance of Talc Personal Injury Claims for voting purposes only based upon fixed values determined by disease type (which values will not be binding on any claimant) eliminates the need to make any individual or class determination, whether by estimation or otherwise, regarding Talc Personal Injury Claims, a process that can be time-consuming and difficult, if not impossible. There are hundreds of Talc Personal Injury Claims listed on the Schedules, and holding an estimation hearing or hearings for such Claims would only delay administration of this Chapter 11 Case and the ultimate distribution of funds to claimants with valid Claims. In addition, the Debtor will also be tabulating votes from holders of Talc Personal Injury Claims by headcount for purposes of section 524(g) of the Bankruptcy Code.

47. If any holder of a Direct or Indirect Talc Personal Injury Claim seeks a different treatment of its Claim for voting purposes, such holder will be required to file a motion (a "Rule 3018 Motion"), pursuant to Bankruptcy Rule 3018(a), seeking temporary allowance of their Claim in a different amount for purposes of voting to accept or reject the Plan. The holder of such Talc Personal Injury Claim will further be required to serve the Rule 3018 Motion on the Debtor's counsel so that it is received no later than **October 9, 2026 at 4:00 p.m. (prevailing Eastern Time)** (the "Rule 3018 Motion Deadline"). In accordance with Bankruptcy Rule 3018, the Debtor proposes that any Ballot submitted by a claimant that files a Rule 3018 Motion will be counted solely in accordance with the tabulation procedures set forth above unless and until the underlying Talc Personal Injury Claim is temporarily allowed by the Court for voting purposes in a different amount, after notice and a hearing, *provided* that the order allowing such claim is entered before the Voting Deadline.

48. If a Rule 3018 Motion is timely filed as provided herein, the Debtor and any parties in interest will have until **October 16, 2026 at 4:00 p.m. (prevailing Eastern Time)** to file and serve a response. If a response is timely filed, a hearing on the Rule 3018 Motion shall be scheduled on an expedited basis on a date provided by the Court prior to the Voting Deadline.

49. Courts presiding over numerous other mass tort bankruptcy cases have allowed claims temporarily for limited purposes in order to facilitate voting on plans of reorganization in the manner proposed by the Debtor. *See, e.g.*, *In re AIO US, Inc.*, Case No. 24-11836 (CTG) (Bankr. D. Del. May 20, 2025) [Docket No. 1047] (temporarily allowing talc claims for voting purposes only in set amounts based on disease type, according to medical criteria set forth in the trust distribution procedures); *In re Imerys Talc America, Inc.*, Case No. 19-10289 (LSS) (Bankr. D. Del. Nov. 5, 2024) [Docket No. 6730] (temporarily allowing direct talc personal injury claims for voting purposes only using scheduled values based on disease type and indirect talc claims at a fixed amount); *In re Paddock Enterprises, LLC.*, No. 20-10028 (LSS) (Bankr. D. Del. Feb. 7, 2020) [Docket No. 1216] (temporarily allowing direct asbestos claims for voting purposes only in set amounts based on disease type, determined according to medical criteria set forth in the asbestos trust distribution procedures, and indirect asbestos claims at $1 per claimant).

**E. The Voting Deadline Should be Approved**

50. Bankruptcy Rule 3017(c) provides that "[o]n or before the approval of the disclosure statement, the court shall fix a time within which holders of claims and interests may accept or reject the plan." Local Rule 3017-2(b)(v) further provides that any motion for interim approval of a disclosure statement "must be accompanied by a proposed order that…approves the voting procedures including establishing…a voting deadline at least 10 days before the joint hearing."

51. The Debtor will use its reasonable efforts to distribute, or cause to be distributed, the Solicitation Packages by first-class mail as soon as practicable following entry of the Solicitation Procedures Order, and no later than **September 25, 2026**. Based on this schedule, the Debtor requests that the Court set the Voting Deadline as the deadline by which the Administrative Agent must actually receive completed Ballots from holders of Talc Personal Injury Claims or General Unsecured Claims entitled to vote on the Plan (or from their counsel, in the case of holders of Talc Personal Injury Claims). The Solicitation Procedures provide that, to be counted, completed Ballots must be returned to and actually received by the Administrative Agent on or before the Voting Deadline by (a) mail, (b) overnight delivery, or (c) via electronic, online transmissions solely via upload to the online balloting portal on the Debtor's case website maintained by the Administrative Agent (the "E-Ballot Portal"). Instructions for electronic, online transmission of Ballots are set forth on the forms of Ballots, in the Disclosure Statement, and on the Debtor's case website at https://omniagentsolutions.com/Vi-Jon. The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner and the electronic signature of the party entitled to vote will be deemed to be immediately legally valid and effective. Ballots submitted by utilizing the E-Ballot Portal will be deemed to include an original electronic signature. Any Ballot submitted by facsimile transmission or other electronic means other than through the E-Ballot Portal will not be counted.

52. As the Debtor will serve the Solicitation Packages on or before **September 25, 2026**, the proposed Voting Deadline provides holders of Talc Personal Injury Claims and General Unsecured Claims entitled to vote on the Plan or their counsel sufficient time (approximately 28 days) within which to review the Solicitation Package, to cast votes on the Plan, and to deliver those votes to the Administrative Agent. Given that the Ad Hoc Plaintiffs' Group (representing

over 80% of current holders of Talc Personal Injury Claims) supports the Plan, the Debtor submits that this timeline is sufficient and appropriate under the circumstances and consistent with solicitation periods in other mass tort cases in this district. *See, e.g., In re Mosaic Companies, LLC*, No. 25-11296 (CTG) (Bankr. D. Del. Oct. 8, 2025) [Docket No. 360] (asbestos case approving a 23 day solicitation period); *In re Imerys Talc America Inc.*, No. 19-10289 (LSS) (Bankr. D. Del. Jan. 27, 2021) [Docket No. 2863] (asbestos case approving a 36 day solicitation period); *In re Insys Therapeutics, Inc.*, Case No. 19-11292 (KG) (Bankr. D. Del. Dec. 4, 2019) [Docket No. 952] (mass tort case approving 28 day solicitation period).

**F. The Tabulation Procedures are Appropriate and Should be Approved**

53. To be counted as votes to accept or reject the Plan, Ballots must be properly executed, completed, and delivered to the Administrative Agent so that they are received no later than **October 23, 2026 at 4:00 p.m. (prevailing Eastern time)** (the "Voting Deadline").

54. As set forth in greater detail in the Solicitation Procedures, the Administrative Agent will not count any Ballot if, among other things, (a) the Ballot or Master Ballot is submitted by or on behalf of a holder who is not eligible to vote, (b) the Ballot or Master Ballot is not completed and submitted to the Administrative Agent before the Voting Deadline (unless the Debtor or the Court grants an extension with respect to such Ballot), (c) the Ballot or Master Ballot does not designate either acceptance or rejection of the Plan, or designates both, (d) the Ballot (other than a Master Ballot) partially rejects and partially accepts the Plan, (e) the Ballot or Master Ballot received is in a form other than the official form sent by the Administrative Agent, (f) the Ballot is submitted by facsimile or electronic means other than through the E-Ballot Portal (as defined below), or (g) the Ballot or Master Ballot is illegible, incomplete, unsigned, or duplicative.

55. If multiple Ballots are received from the same holder with respect to the same Claim prior to the Voting Deadline, the last properly executed Ballot timely received will be deemed to reflect such Holder's intent and will supersede and revoke any prior Ballot.

56. If multiple Master Ballots are received for the same holder on the same Claim, but are submitted by different attorneys or agents, such Holder's vote will be counted only once and only if the votes on each Master Ballot are consistent. If the votes are not consistent, the Administrative Agent shall contact the relevant attorneys or agents, with notice of such communication to counsel to the Debtor, and request that the attorneys or agents coordinate with each other to resolve the conflicting representation, and for the appropriate attorney or agent to send an e-mail to Vi-JonInquiries@OmniAgnt.com with a reference to "Vi-Jon Master Ballot Submission" copying all affected attorneys and the Debtor confirming such resolution. If representation of the holder of the Talc Personal Injury Claim is not resolved before the earlier of (a) ten (10) calendar days from the notice of the conflict as provided by the Administrative Agent or (b) the Voting Deadline, such votes shall not be counted. If Ballots are received from each of a holder of a Talc Personal Injury Claim and a Firm or such Firm's agent, the Ballot received from the holder of the Talc Personal Injury Claim will be the Ballot that is counted and the vote of the purported Firm or agent will not be counted.

57. The Administrative Agent has the discretion, but not the obligation, to contact voters to cure any defects in the Ballots. A voter that submits a valid Ballot may withdraw his, her, or its vote in accordance with the procedure set forth in the Solicitation Procedures; *provided, however*, that the Debtor will not be obligated to recognize any withdrawal, revocation, or change of any vote received after the Voting Deadline (or such later date as agreed by the Debtor).

58. The Debtor respectfully requests that the Court approve the foregoing procedures and deadlines and find that they comply with the applicable sections of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

## III. APPROVAL OF THE FORM OF BALLOTS

59. Bankruptcy Rule 3017(d) requires that the Debtor use a form of ballot substantially conforming to Official Form No. 314. The Debtor proposes to prepare and distribute 3 sets of ballots: (a) a "Class 3 Ballot," sent to all holders of General Unsecured Claims; (b) a "Class 4 Master Ballot" to be used by attorneys to tabulate votes solicited from their Clients; and (c) a "Class 4 Direct Ballot," to be used by holders of Talc Personal Injury Claims voting directly on the Plan. The forms of the Ballots are based on Official Form No. 314, but have been modified to address the particular aspects of this Chapter 11 Case, including the Talc Personal Injury Trust.

60. The Ballots will be distributed to holders of General Unsecured Claims and Talc Personal Injury Claims (or, for holders of Talc Personal Injury Claims, such holder's attorney, if applicable) in accordance with the Solicitation Procedures. The forms of Ballots are similar in all material respects to those used in other mass tort chapter 11 cases. Moreover, the Ballots proposed for use in this case contain appropriate certifications to be made concerning the authority of counsel to vote on behalf of holders of Talc Personal Injury Claims. Accordingly, the Debtor submits that the proposed forms of Ballots substantially comply with Bankruptcy Rule 3017(d) while taking into account the particular circumstances of this Chapter 11 Case and accordingly should be approved.

## IV. APPROVAL OF THE FORM, MANNER, AND SCOPE OF THE CONFIRMATION NOTICES

61. Local Rule 3017-2(b)(v) provides that any motion for interim approval of a disclosure statement "must be accompanied by a proposed order that…approves the voting

procedures including establishing…a voting deadline at least 10 days before the joint hearing." In accordance with Local Rule 3017-2, and in light of the Debtor's proposed solicitation schedule, the Debtor proposes that **November 4, 2026 at 10:30 a.m. (prevailing Eastern Time)** be fixed by the Court as the Combined Hearing date. Such date will provide the Debtor sufficient time to solicit votes on the Plan in accordance with the schedule described herein and to notify the required parties of the Combined Hearing date and the opportunity to submit objections to the Plan, if any, before the Combined Hearing. The Debtor also requests that the Court order that the Combined Hearing may be continued from time to time by the Debtor without further notice to creditors or other parties in interest.

### A. The Form of Notice of the Combined Hearing and Objection Deadline is Appropriate and Should be Approved

62. Bankruptcy Rule 3017(d) requires a plan proponent to send to all creditors and interest holders a notice regarding the deadlines for voting on a chapter 11 plan. Bankruptcy Rule 2002(b) requires 28 days' notice of any hearing to consider confirmation of a plan of reorganization.

63. Following entry of the Solicitation Procedures Order, the Debtor intends to provide copies of the Notice of Combined Hearing and Objection Deadline (the "Combined Hearing Notice"), substantially in the form attached as Exhibit 2 to the Solicitation Procedures Order, as part of the Solicitation Packages. As noted above, the Solicitation Packages will also include the Disclosure Statement, the Plan, and numerous additional documents relevant to the Plan and the confirmation process, and will be mailed **on or before September 25, 2026**. Thus, parties will have well in excess of the required 28 days' notice of the proposed Combined Hearing date and Objection Deadline required by Bankruptcy Rule 2002(b). Accordingly, the Combined Hearing

Notice should be considered adequate and sufficient notice under Bankruptcy Rules 2002 and 3017(d).

**B. Publication Notice is Appropriate and Should be Approved**

64. Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if notice by mail is impracticable or if it is desirable to supplement the notice." Bankruptcy Rule 9008 further provides that the court may "determine the form and manner" of publication notice. Accordingly, the Debtor requests that the Court authorize the Debtor to give supplemental publication notice of the Combined Hearing and Objection Deadline, no later than 28 days prior to the Objection Deadline, in each of (a) a national newspaper to be determined by the Debtor and (b) the local edition of the *St. Louis Daily Record*, or, in any such case, another newspaper of comparable national or local circulation, as applicable (the "Publication Notice"). The Debtor proposes that the Publication Notice contain a limited subset of the information contained in the proposed Combined Hearing Notice that the Debtor determines, in its discretion, is sufficient to put unknown parties on notice of the Combined Hearing and related deadlines, and to identify the means by which such parties can obtain additional information regarding the Chapter 11 Case.

65. Additionally, the Debtor will prominently post the Combined Hearing Notice to the Administrative Agent's website, along with the Motion and Solicitation Procedures Order.

66. The Debtor submits that the foregoing procedures provide adequate notice of the Combined Hearing and, accordingly, request that the Court approve such notice as appropriate and in compliance with the relevant requirements of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

### C. The Form of Notice of Non-Voting Status is Appropriate and Should be Approved

67. Pursuant to section 1126(f) of the Bankruptcy Code, each holder of a claim in an unimpaired class is "conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class…is not required." 11 U.S.C. § 1126(f). Here, Holders of Claims in Class 1 (Other Secured Claims) and Class 2 (Other Priority Claims) are unimpaired and are conclusively presumed to accept the Plan. Accordingly, Holders of Claims in these unimpaired Classes are not entitled to vote on the Plan.

68. Conversely, section 1126(g) of the Bankruptcy Code provides that "a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests." 11 U.S.C. § 1126(g). Here, the Plan provides that Holders of Claims and Interests in Class 5 (Intercompany Claims), Class 6 (Section 510(b) Claims), and Class 7 (Existing Equity Interests) are impaired and are deemed not to have accepted the Plan and are likewise not entitled to vote.

69. Providing full Solicitation Packages (as defined below) to Holders of Claims and Interests in Classes 1, 2, 5, 6 and 7 (collectively, the "Non-Voting Holders") would impose unnecessary costs on the Debtor without corresponding benefits. Accordingly, the Debtor requests a waiver of the requirement to mail copies of the Plan and Disclosure Statement to the Non-Voting Holders. *See* Fed. R. Bankr. P. 3017(d) (requiring a debtor to mail a court-approved disclosure statement and the plan or a court-approved summary of the plan to creditors and equity security holders). The Court should determine that the Debtor is not required to provide full Solicitation Packages to the Non-Voting Holders because they are presumed to accept or reject the Plan by operation of law and their rights are not otherwise affected by the Plan. Requiring the Debtor to

transmit the Disclosure Statement and Plan to such Non-Voting Holders would impose an unnecessary administrative burden on the Debtor without a corresponding benefit. Similar relief has been granted in other cases in this District. *See, e.g.*, *In re Valves and Controls US, Inc.*, No. 25-11403 (TMH) (Bankr. D. Del. Apr. 15, 2026) [Docket No. 398] (approving service of a notice of non-voting status in lieu of the solicitation packages for holders of claims and interests deemed to accept or reject the plan); *In re AIO US, Inc.,* No. 24-11836 (CTG) (Bankr. D. Del. May 20, 2025) [Docket No. 1047] (same); *In re Proterra Inc.*, Case No. 23-11120 (BLS) (Bankr. D. Del. Jan. 25, 2024) [Docket No. 951] (same).

70. Accordingly, the Debtor proposes to send the Combined Hearing Notice and a notice of non-voting status (the "Notice of Non-Voting Status"), substantially in the form attached as Exhibit 4 to the Solicitation Procedures Order, to each of the Non-Voting Holders, other than Class 5 (Intercompany Claims) and Class 7 (Existing Equity Interests). With respect to Class 5 (Intercompany Claims) and Class 7 (Existing Equity Interests), the Debtor requests a waiver of any requirement to serve copies of the Plan, Disclosure Statement, Combined Hearing Notice, and Notice of Non-Voting Status because such Claims and Interests are held by the Debtor and/or its affiliates. The Debtor respectfully requests that the Court approve the form and scope of the Combined Hearing Notice, the Publication Notice, and the Notice of Non-Voting Status, pursuant to Bankruptcy Rules 2002 and 9008 and section 1126 of the Bankruptcy Code.

71. In addition, the Debtor requests that the Court direct that any responses or objections to the adequacy of the Disclosure Statement must: (a) be in writing; (b) conform to the applicable Bankruptcy Rules and Local Rules; (c) set forth the name of the objecting party, the basis for the objection, and the specific grounds thereof, and, if practicable, a proposed modification to the Plan or Disclosure Statement that would resolve such objection; and (d) be

filed with the Court, together with proof of service. In addition to being filed with the Court, any such responses or objections must be served on the following parties so as to be actually received by the Objection Deadline:

a. the Debtor, Vi-Jon, LLC, 8800 Page Ave., St. Louis, MO 63114 (Attn: Mackenzie Shea (mshea@thinkbrg.com));

b. proposed co-counsel to the Debtor, Morris James LLP, 3205 Avenue North Boulevard, Suite 100, Wilmington, Delaware 19803 (Attn: Eric J. Monzo (emonzo@morrisjames.com); Jason S. Levin (jlevin@morrisjames.com); Samantha L. Rodriguez (srodriguez@morrisjames.com));

c. proposed co-counsel to the Debtor, Sidley Austin LLP, 787 Seventh Avenue, New York, NY 10019 (Attn: Tom R. Califano (tom.califano@sidley.com); William E. Curtin (wcurtin@sidley.com); Anne G. Wallice (anne.wallice@sidley.com));

d. counsel to the Non-Debtor Affiliates, Bryan Cave Leighton Paisner LLP, 161 North Clark Street, Suite 4300, Chicago, IL 60601 (Attn: Justin Winerman (justin.winerman@bclplaw.com); Bart Wall (bart.wall@bclplaw.com); Laurence Frazen (larry.frazen@bclplaw.com); Katie Spewak (katie.spewak@bclplaw.com); Daniel Reynolds (daniel.reynolds@bclplaw.com));

e. the Future Claimants' Representative, Hon. Shelley C. Chapman (Ret.), Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, schapman@willkie.com (with copies to Jamie Eisen (jeisen@willkie.com));

f. the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Jonathan Lipshie (jon.lipshie@usdoj.gov)); and

g. proposed counsel to the Unsecured Creditors Committee, Caplin & Drysdale Chartered, 1200 New Hampshire Avenue NW, 8th Floor, Washington, DC 20036 (Attn: Kevin M. Davis, kdavis@capdale.com; Todd Phillips, tphillips@capdale.com)).

## V. APPROVAL OF THE PROCEDURES WITH RESPECT TO THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES PURSUANT TO THE PLAN

72. The Plan provides that, as of the Effective Date, the Debtor shall be deemed to have rejected each Executory Contract and Unexpired Lease to which it is a party in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Court. The exceptions to this deemed rejection are: (a) if the Plan specifically provides otherwise or (b) such Executory Contract or Unexpired Lease (i) was previously rejected, assumed, or assumed and assigned pursuant to a Final Order entered on or before the Effective Date, (ii) is subject to a motion to reject, assume, or assume and assign pending as of the Effective Date, or (iii) is listed on a Schedule of Assigned Executory Contracts and Unexpired Leases or Schedule of Assumed Executory Contracts and Unexpired Leases. The order confirming the Plan will constitute an order of the Court approving the above-described assumptions, assignments, and rejections.

73. With respect to any Executory Contract or Unexpired Lease included on any Schedule of Assigned Executory Contracts and Unexpired Leases, at any time prior to the Effective Date, the Non-Debtor Affiliate to which the Executory Contract or Unexpired Lease is assigned (or its designee) may, by written notice to the Debtor, remove any Executory Contract or Unexpired Lease from the Schedule, and the Debtor shall amend such Schedule accordingly and provide any notice to the applicable counterparty required by the Court. In addition, with respect to any Executory Contract or Unexpired Lease that is subject to a dispute regarding the applicable

Cure, adequate assurance of future performance, or any other matter pertaining to the proposed assumption and assignment thereof, the applicable Non-Debtor Affiliate (or its designee) may remove such Executory Contract or Unexpired Lease from the Schedule of Assigned Executory Contracts and Unexpired Leases at any time through and including seven (7) Business Days after entry of a Final Order resolving such dispute. Any Executory Contract or Unexpired Lease so removed shall not be assumed and assigned to such Non-Debtor Affiliate (or designee) and, unless the Debtor or Reorganized Debtor elects to assume such Executory Contract or Unexpired Lease, shall be deemed rejected by the Debtor as of the Effective Date; *provided* that the applicable Non-Debtor Affiliate (or designee) shall not acquire any rights or assume any liabilities thereunder, and Emprise shall have no obligation to pay any Cure with respect thereto.

74. In addition to the Combined Hearing Notice, the Debtor will provide notices to all counterparties to the Debtor's Executory Contracts and Unexpired Leases that may be assumed and/or assigned under the Plan (such notice, the "Contract/Lease Notice"), substantially in the form attached as Exhibit 5 to the Solicitation Procedures Order. Any objection by an Executory Contract or Unexpired Lease counterparty to a proposed assumption and assignment or to a related cure cost, on any grounds, including those set forth in section 365 of the Bankruptcy Code, must be filed, served, and actually received by the Debtor within 14 days after the filing of the relevant Schedule of Assigned Executory Contracts and Unexpired Leases or Schedule of Assumed Executory Contracts and Unexpired Leases. Any objections to cure costs may be scheduled for a separate hearing in the Debtor's sole discretion.

75. The Debtor respectfully submits that the Contract/Lease Notice complies with the Bankruptcy Code and therefore should be approved.

## RESERVATION OF RIGHTS

76. Nothing contained herein or any action taken pursuant to the relief requested is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor or any party in interest's rights to dispute the amount of, basis for, or validity of any claim or interest under applicable law or nonbankruptcy law; (c) a promise or requirement to pay any claim or other obligation; (d) a waiver of the Debtor or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or granting of approval for assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtor or any party in interest's rights to subsequently dispute such claim.

## NOTICE

77. Notice of this Motion has been provided by email, facsimile, or first-class mail to: (a) all Persons or Entities that have filed Proofs of Claim in this Chapter 11 Case that have not been previously withdrawn or disallowed by a final order; (b) all Persons or Entities listed in the Schedules as holding liquidated, noncontingent, and undisputed Claims; (c) all known attorneys representing any holders of Talc Personal Injury Claims; (d) any other known holders of Claims against, or Equity Interests in, the Debtor; (e) the U.S. Trustee; (f) counsel to the Non-Debtor Affiliates; (g) counsel to the Future Claimants' Representative; (h) counsel to the Unsecured Creditors Committee; and (i) all parties entitled to notice pursuant to Local Rule 2002-1(b). Notice of this Motion and any order entered hereon will be served in accordance with

Local Rule 9022-1. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtor respectfully requests entry of the proposed Solicitation Procedures Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

Dated: September 2, 2026
Wilmington, Delaware

*/s/ Jason S. Levin*

**MORRIS JAMES LLP**
Eric J. Monzo (DE Bar No. 5214)
Jason S. Levin (DE Bar No. 6434)
Samantha L. Rodriguez (DE Bar No. 7524)
3205 Avenue North Boulevard, Suite 100
Wilmington, Delaware 19803
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: emonzo@morrisjames.com
jlevin@morrisjames.com
srodriguez@morrisjames.com

*Proposed Co-Counsel to the Debtor and Debtor in Possession*

**SIDLEY AUSTIN LLP**
Thomas R. Califano (admitted *pro hac vice*)
William E. Curtin (admitted *pro hac vice*)
Anne G. Wallice (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: tom.califano@sidley.com
wcurtin@sidley.com
anne.wallice@sidley.com

*Proposed Co-Counsel to the Debtor and Debtor in Possession*